[No. B023605. Second Dist., Div. Seven. Nov. 13, 1987.]

WHITE DRAGON PRODUCTIONS, INC., Cross-complainant and Appellant, v.
PERFORMANCE GUARANTEES, INC., Cross-defendant and Respondent.

**COUNSEL**

Bigelow & Moore and Franklin T. Bigelow, Jr., for Cross-complainant and Appellant.

Dern, Mason & Floum, Richard H.. Floum and Pinckney N. Whitfield for Cross-defendant and Respondent.

**OPINION**

**THOMPSON, J.**—In this appeal we shall conclude summary judgment upholding the terms of a contract was improper, due to triable issues of fact concerning the voidability of the contract. Reversed with directions.

### FACTUAL & PROCEDURAL BACKGROUND

Plaintiff Mitsui Manufacturers Bank filed the underlying action of interpleader against defendants White Dragon Productions, Inc., Performance Guarantees, Inc., and Tadeusz Bugaj, to compel them to interplead and litigate their several claims to a bank account. (Code Civ. Proc. § 386, subd. (b).) This appeal by White Dragon Productions is from the judgment awarding the account to Performance Guarantees.

In September 1985, White Dragon Productions and Performance Guarantees executed a document entitled Completion and Security Agreement (Agreement), whereby Performance Guarantees became the completion

guarantor of a film being coproduced by White Dragon Productions. The Agreement authorized Performance Guarantees to assume control of production when, inter alia, it deemed it likely the film would not be completed on time. In the event of such a takeover, the Agreement vested Performance Guarantees with power of attorney, including the right to withdraw production funds from White Dragon's accounts upon the signature of its own designated representative.

As specified in the Agreement, White Dragon Productions opened two accounts in its name at Mitsui Manufacturers Bank in Beverly Hills (Mitsui accounts).[1] It is undisputed for the most part that these accounts held production funds for the film.[2]

During filming, Performance Guarantees wrested control of production from White Dragon Productions, claiming it was contractually authorized to assume control and to withdraw production funds from the account because it appeared likely production would not otherwise be completed on time.

Mitsui, faced with competing claims to White Dragon's accounts, filed the underlying complaint of interpleader. The three defendants separately answered the complaint and each asserted a right to the funds. White Dragon Productions also cross-complained against Mitsui, Bugaj and Performance Guarantees.[3]

Performance Guarantees moved for summary judgment, or alternatively for summary adjudication of issues. It claimed it was entitled to withdraw

---

[1] On December 5, 1985, Tadeusz Bugaj, one of the signatories on the Mitsui accounts, closed one of these accounts and transferred its funds to a new Mitsui account that he opened in the name of White Dragon Productions. Bugaj designated himself as sole signatory on the new account. It is actually this new account that is at issue herein.

[2] The parties agree that most of the funds from the accounts deposited in the court by Mitsui were to be used for production. Performance Guarantees claims only $473.66 of the $45,055.28 at issue was not definitely for production. White Dragon Productions concedes the accounts held "primarily" production funds, but fails to specify what amount was not for production.

[3] Although White Dragon Productions' cross-complaint raised causes of action unrelated to the issue before the court on the cross-motions for summary judgment, White Dragon Productions' position, which was unopposed and accepted by the court, was that summary judgment could be entered without prejudice to White Dragon Productions' right to pursue the other issues in another action.

The other issues raised in the cross-complaint were primarily directed against Mitsui for violation of federal banking laws, breach of contract, and fraud in allowing Bugaj to unilaterally close White Dragon Productions' account and open a new account for which Bugaj was sole signatory.

production funds from the account pursuant to the terms of the Agreement. Performance Guarantees claimed $44,581.52 of the $45,055.28 deposited with the court by Mitsui. Performance Guarantees submitted an accounting showing it had spent more than $44,581.52 to complete the film.

Bugaj filed a notice of nonopposition to Performance Guarantees' motion for summary judgment.

White Dragon Productions opposed Performance Guarantees' motion, contending Performance Guarantees was not entitled to summary judgment as a matter of law for two reasons: (1) Performance Guarantees was not a corporation in good standing and hence was precluded from "maintaining" the interpleader action (Corp. Code, § 2203, subd. (c)). (2) The Agreement was voidable at the election of White Dragon Productions for Performance Guarantees' failure to file state franchise tax returns and failure to pay state franchise taxes (Rev. & Tax. Code, §§ 23301, 23301.5, 23304, 23305, 23305a).

White Dragon Productions also contended summary judgment for Performance Guarantees was improper due to triable issues of material fact concerning Performance Guarantees' rights under the Agreement. White Dragon Productions argued that if Performance Guarantees was not contractually entitled to have taken over production, Performance Guarantees was not contractually entitled to withdraw production funds from the Mitsui accounts.

White Dragon Productions also moved for summary judgment, claiming, inter alia, the contract relied upon by Performance Guarantees was voidable pursuant to statute due to Performance Guarantees' failure to file state franchise tax returns and failure to pay state franchise taxes. (Rev. & Tax. Code, §§ 23301, 23301.5, 23303, 23304, 23305, 23305a.)

The court granted Performance Guarantees' summary judgment motion, and denied White Dragon Productions' summary judgment motion. Judgment was entered in favor of Performance Guarantees. Mitsui was awarded costs and attorneys' fees of $1,152, and Performance Guarantees was awarded the balance of the funds in the account. This appeal followed.

## DISCUSSION

White Dragon Productions contends that because Performance Guarantees entered into the Agreement while in violation of California

franchise tax filing and payment requirements (Rev. & Tax. Code, §§ 23301,[4] 23301.5,[5] 23303),[6] the Agreement is thus voidable pursuant to statute. (Rev. & Tax. Code, § 23304.)[7]

■■ ■■ White Dragon Productions' argument makes two assumptions: That Performance Guarantees was required to file and pay state franchise taxes, and that it failed to do so.

The corporate obligation to pay state franchise tax is set forth by statute as follows:

"With the exception of financial corporations, every corporation doing business within the limits of this state and not expressly exempted from taxation by the provisions of the Constitution of this state or by this part, shall annually pay to the state, for the privilege of exercising its corporate franchises within this state, a tax according to or measured by its net income, to be computed at the rate of 7.6 percent upon the basis of its net income for the next preceding income year. In any event, each such corporation shall pay annually to the state, for the said privilege, a minimum tax of one hundred dollars ($100.)" (Rev. & Tax. Code, § 23151, subd. (a).)

According to the above, unless expressly excepted, every corporation doing business in California is required to pay state franchise tax. Thus only two factors are relevant—the absence of an express exception, and a corporation doing business in California. Performance Guarantees meets both requirements.

---

[4] Revenue and Taxation Code section 23301 states in part: "Except for the purposes of filing an application for exempt status or amending the articles of incorporation as necessary either to perfect that application or to set forth a new name, . . . the exercise of the corporate powers, rights and privileges of a foreign taxpayer in this state may be forfeited if any of the following conditions occur:

"(a) If any tax, penalty or interest, or any portion thereof, which is due and payable . . . is not paid . . . or

"(b) If any tax, penalty or interest, or any portion thereof due and payable upon notice and demand from the Franchise Tax Board, . . . is not paid . . . ."

[5] Revenue and Taxation Code section 23301.5 states in part: "Except for the purposes of filing an application for exempt status or amending the articles of incorporation as necessary either to perfect that application or to set forth a new name, . . . the exercise of the corporate powers, rights and privileges of a foreign taxpayer in this state may be forfeited if a taxpayer fails to file a return."

[6] Revenue and Taxation Code section 23303 states: "Notwithstanding the provisions of Section 23301 or Section 23301.5, any bank or corporation which transacts business or receives income within the period of its suspension or forfeiture shall be subject to tax under the provisions of this chapter."

[7] Revenue and Taxation Code section 23304 states: "Every contract made in violation of this article is hereby declared to be voidable, at the instance of any party other than the taxpayer."

Nothing in the record suggests Performance Guarantees may claim or even attempts to claim the benefit of an express exception. It is undisputed Performance Guarantees was doing business in California.[8] ■ We are left with the question of whether Performance Guarantees was a corporation, for when it entered into the Agreement in September 1985, its certificate of incorporation issued by the State of Delaware was void for nonpayment of taxes. We conclude Performance Guarantees was a corporation at the time it entered the Agreement due to its subsequent renewal and revival. According to Delaware Corporation Law section 312, subdivision (e), "Upon the filing of the certificate in accordance with section 103 of this title the corporation shall be renewed and revived with the same force and effect as if its certificate of incorporation had not been forfeited . . . or inoperative and void, or had not expired by limitation." Hence, Performance Guarantees was a corporation doing business in California at the time it entered into the Agreement.

■ Although Performance Guarantees subsequently qualified to transact intrastate business in California and presumably paid any delinquent taxes at that time (Corp. Code, § 2203, subd. (c)), such payment should not prejudice White Dragon Productions' right to assert the voidability of the Agreement under Revenue and Taxation Code section 23304. According to Revenue and Taxation Code section 23305a, "such reinstatement shall be without prejudice to any action, defense or right which has accrued by reason of the original suspension or forfeiture."

As stated by the court in *Schwartz* v. *Magyar House, Inc.* (1959) 168 Cal.App.2d 182, 190 [335 P.2d 487]: "While it is true that section 23305a does provide that the reinstatement 'shall be 'without prejudice to any action, defense or right which has accrued by reason of the original suspension . . .,' we are of the view that the taking of a default judgment by virtue of the fact that defendant may not defend is not a 'right' within the contemplation of the above provision. Although no reported case has, as yet, construed the language quoted above, it would appear to have application, for instance, to a situation where a contract made by the corporation is voidable because entered into while the corporation's powers, rights and privileges were suspended (Rev. & Tax. Code, § 23304), and the fact of reinstatement does not deprive the other party of the right to avoid the contract." (See *Perkins Mfg Co.* v. *Clinton Const. Co.* (1930) 211 Cal. 228, 235 [295 P.

---

[8] While Performance Guarantees had not qualified to transact "intrastate business" in California when it entered into the Agreement, we do not consider this relevant to our determination of its obligation to pay California state franchise taxes for "doing business" in California. Nothing in the statute suggests only foreign corporations qualified to transact intrastate business are liable to pay franchise taxes. (Rev. & Tax. Code, § 23151, subd. (a); see Organizing Corporations in Cal. (Cont. Ed. Bar 1983) § 5.77, p. 414.)

1, 75 A.L.R. 439]. ["The law is settled in this state that a subsequent payment of the tax in no way validates prior transactions."].)

■ While the record contains no direct evidence that Performance Guarantees has ever been suspended by the California Secretary of State,[9] we think the language of Revenue and Taxation Code section 23305a is nevertheless applicable herein. It is both fair and logical that the "action, defense or right" which would accrue against a suspended tax-delinquent foreign corporation should also accrue against a nonqualified, and hence nonsuspended, tax-delinquent foreign corporation. By saying this, we do not suggest that suspension or forfeiture is automatic; what concerns us is that the Franchise Tax Board can only submit names of tax-delinquent foreign corporations to the Secretary of State for suspension purposes (Rev. & Tax. Code, § 23302), if it is aware of their existence. When the state has no record of their existence, suspension or forfeiture is impossible.[10] It would defy logic to immunize a nonqualified tax-delinquent corporation from the "action, defense or right" which would have accrued against it had it followed this state's qualification procedures.

■ We conclude Performance Guarantees is subject to this state's franchise tax requirements because it is not expressly excepted and because it is a corporation doing business in California. ■ We next examine whether the record supports the inference that Performance Guarantees failed to comply with those requirements.

White Dragon Productions argues it is reasonable to infer noncompliance due to Performance Guarantees' failure to qualify to transact intrastate

---

[9]White Dragon Productions presented evidence that the California Secretary of State had suspended a *California* corporation by the name Performance Guarantees, Inc.

Performance Guarantees filed a declaration stating it was unrelated to the California corporation of the same name.

[10]"The forfeiture prescribed by Revenue and Taxation Code section 23301 is not automatic, and it will take effect ('become effective') only when the Franchise Tax Board transmits the name of the tax-delinquent foreign corporation to the Secretary of State. (Rev. & Tax. Code, § 23302.)" (*Mediterranean Exports, Inc.* v. *Superior Court* (1981) 119 Cal.App.3d 605, 617 [174 Cal.Rptr. 169].)

Performance Guarantees attempts to escape the voidability provision of Revenue and Taxation Code section 23304 by relying on the above quoted language. In *Mediterranean Exports,* however, the court did not consider the applicability of Revenue and Taxation Code section 23304. The issue before that court arose from the striking of a corporation's answer and cross-complaint on the ground that it was without capacity to sue or defend because it had forfeited the corporate powers, rights and privileges of a foreign corporation, pursuant to Revenue and Taxation Code section 23301, by reason of its failure to pay franchise taxes to the State of California. (*Mediterranean Exports, supra,* 119 Cal.App.3d at p. 617.) It was in this context that the appellate court concluded there was no automatic forfeiture and hence the answer and cross-complaint was erroneously stricken. We face a different question; thus the decision is inapplicable to our analysis.

business in California prior to June 1986. Until then it had no corporate identification number and presumably could not have paid taxes or filed a return without an identification number.

According to Code of Civil Procedure section 473c, subdivision (c), a trial court is required to consider "all inferences reasonably deducible from such evidence, except summary judgment shall not be granted by the court based on inferences reasonably deducible from the evidence, if contradicted by other inferences or evidence, which raise a triable issue as to any material fact." (See *Maxwell* v. *Colburn* (1980) 105 Cal.App.3d 180, 185 [163 Cal.Rptr. 912].)

Performance Guarantees has never refuted the allegation of its past tax-delinquent status, even though raised both below and on this appeal. We conclude the inference is reasonable, and that the trial court thus erred in failing to consider it.

■ Based on our findings that Performance Guarantees was subject to state franchise tax requirements and was in violation thereof at the time it entered into the Agreement, we conclude that there is no triable issue of fact whether the Agreement is voidable pursuant to Revenue and Taxation Code section 23304.

■■ "Voidable" has been defined as follows by the court in *Depner* v. *Joseph Zukin Blouses* (1936) 13 Cal.App.2d 124, 127 [56 P.2d 574]: "A voidable act takes its full and proper legal effect unless and until it is disputed and set aside by some tribunal, entitled so to do. (Bouvier's Law Dictionary, 3406.) 'Voidable' means subject to be avoided by judicial action of a court of adequate jurisdiction. (8 Words and Phrases, 7342.) And a voidable contract is one which is void as to the wrongdoer but not void as to the wronged party unless he elect to so treat it. [Citation.] A voidable contract is one which may be rendered null at the option of one of the parties, but is not void until so rendered. [Citation.]"

■■ At the time Performance Guarantees filed its motion for summary judgment, the Agreement was voidable but not void. In its opposition to the motion, and also in its cross-motion for summary judgment, White Dragon Productions elected to treat the Agreement as void. The trial court nevertheless granted Performance Guarantees summary judgment, thus upholding the Agreement. This was reversible error.

White Dragon Productions, by electing to treat the Agreement as void, implicitly requested the court to render the Agreement void. Although White Dragon Productions unartfully drafted its motion for summary judg-

ment or alternatively, summary adjudication of issues, in that it failed to request a specific ruling rendering the Agreement void, we think White Dragon Productions sufficiently raised a triable issue of material fact, demonstrating that Performance Guarantees was not entitled to the account under the Agreement as a matter of law. We therefore conclude summary judgment for Performance Guarantees was improper.

■ Finally, we consider White Dragon Productions' motion for summary judgment. Had we not concluded the Agreement is voidable, we would have upheld the judgment because Performance Guarantees has otherwise established its right to the account as a matter of law pursuant to the terms of the Agreement. Although not set forth in full in this opinion, we have considered and rejected White Dragon Productions' remaining arguments attacking Performance Guarantees' summary judgment motion.[11] Inasmuch as the Agreement is valid until rendered void, we conclude White Dragon Productions' motion for summary judgment or alternatively, summary adjudication of issues, was properly denied. We suggest that it conduct further discovery, refile its motion, and explicitly request the trial court to render the Agreement void pursuant to Revenue and Taxation Code section 23304.

### DISPOSITION

The judgment is reversed and the cause is remanded. The trial court is directed to vacate its order granting Performance Guarantees' motion for summary judgment. Appellant shall recover costs on appeal.

Lillie, P. J., and Johnson, J., concurred.

---

[11] We have considered and rejected as being without merit, White Dragon Productions' remaining arguments that summary judgment for Performance Guarantees was improper as a matter of law because (1) Performance Guarantees is barred from maintaining the instant action under Corporations Code sections 2105 and 2203, subdivision (3); (2) Performance Guarantees was not contractually entitled to the account; and (3) the purported power of attorney did not entitle Performance Guarantees to withdraw funds from the account.

We also disagree with White Dragon Productions' arguments that summary judgment for Performance Guarantees was improper because of the following issues of material fact: (1) whether Performance Guarantees' takeover of production of the film was justified and in good faith; (2) whether Performance Guarantees fulfilled its obligations under the Agreement; (3) whether Performance Guarantees properly expended funds in completing the film; and (4) whether Performance Guarantees and/or its president are related to the suspended California corporation of the identical name.