**Dale G. BUTTON and Glorianna Button, husband and wife, Plaintiffs–Appellants,**

**v.**

**CONNECTICUT GENERAL LIFE INSURANCE COMPANY; and Cigna Insurance Company, Defendants–Appellees.**

No. 86–2741.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 8, 1987.

Decided May 26, 1988.

---

Bernard I. Rabinovitz and Thomas B. Welch, Rabinovitz & Associates, Tucson, Ariz., for plaintiffs-appellants.

William W. Edwards and Lyle D. Aldridge, Jones, Edwards, Smith & Kofron, Tucson, Ariz., for defendants-appellees.

Before HUG, BOOCHEVER and BRUNETTI, Circuit Judges.

BOOCHEVER, Circuit Judge:

Dale and Glorianna Button (Button) appeal from a grant of summary judgment in favor of Connecticut General Life Insurance Company and Cigna Insurance Company (CGL) in Button's action for continued benefits under a disability insurance policy. The issues presented on this appeal are whether: (1) Button is entitled to lifetime benefits for a back injury causing disability independent of other causes; (2) the policy's incontestability clause prevents CGL from relying on a preexisting condition to deny coverage; and (3) a change in classification of Button's injury, resulting in termination of benefits, constituted bad faith and/or estopped the company from refusing to pay lifetime benefits. We affirm.

## FACTS

In September of 1975, CGL issued a policy of disability income indemnity insurance to Button. On or about December 16, 1979, Button twisted his lower back while lifting a sheet of roofing material in the wind. Button has been totally disabled since. Pursuant to Button's claim, CGL paid monthly benefits for sixty-eight months from December 16, 1979 through August 9, 1985. CGL initially classified the claim as an injury arising out of an accident and its actuary set aside a lifetime reserve for benefit payments. CGL subsequently reclassified the disability as arising out of sickness, but did not notify Button of the change until shortly before termination of benefits. Under the policy, the maximum indemnity period for disability caused by sickness is sixty months. Indemnity for disability caused by injuries may extend over a lifetime.

Button suffered from recurring back problems prior to the 1979 lifting accident. Button was treated for back pain by his physician, Dr. Toll, in the 1960s and in 1973 and 1974. A lifting accident in 1976 forced Button to see Dr. Toll again for back pain. In a deposition, Button testified that between May 1977 and December 1979, he continued to suffer intermittent back problems. It is undisputed that Button suffers from a condition known as degenerative disc disease. CGL claims that the disease contributed to Button's disability, and that Button's disability therefore should be deemed a sickness as defined in the policy. Button contends his previous condition did not contribute to his disability. He insists that the 1979 accident was the sole cause of his disability. Button further argues that the incontestability clause in the policy bars CGL from reducing his claim on the basis of a preexisting disease.

The district court granted CGL's motion for summary judgment. The court concluded that Button's injury was caused or contributed to by his degenerative disc condition. The court also held that the incontestability clause did not invalidate other provisions in the policy.

## DISCUSSION

### I. *Causation*

This diversity case is governed by the substantive law applicable in the forum state. As such, Arizona law is controlling. *See Strassberg v. New England Mutual Life Ins. Co.*, 575 F.2d 1262, 1263 (9th Cir.1978). The dispositive issue is whether Button's disability was the direct result of an accident, independent of all other

causes. The insurance policy provides in relevant part:

*Total Disability Defined.* The Insured will be considered to be totally disabled if, as a result of sickness contracted and commencing while this policy is in force, or as a result directly and independently of all other causes of accidental bodily injuries sustained while this policy is in force, he becomes wholly and continuously disabled....

*Certain Disabilities Deemed Sickness.* For purposes of this policy, a period of disability shall be deemed to result from sickness if it (a) results from injuries caused or contributed to by disease, or (b) results from disease or infection, or medical or surgical treatment therefor ... whether the disease or infection is the proximate or a contributing cause of the loss....

In order to receive lifetime benefit payments, Button's total disability must be the result of an accident independent of all other causes.

In *New York Life Ins. v. Greber*, 55 Ariz. 261, 100 P.2d 987 (1940), the Arizona Supreme Court formulated the following test for determining whether death results solely from accidental causes:

(a) When an accident causes a diseased condition which, together with the accident, results in death, the accident alone is considered the cause of death; (b) when at the time of the accident the insured was suffering from some disease, but such disease had no causal connection with the death resulting from the accident, the accident is the sole cause of the death, and (c) when at the time of the accident there was an existing disease which, cooperating with the accident, resulted in the death, the accident cannot

be considered as the sole cause, independent of all other causes.

*Id.* at 263, 100 P.2d at 987.

The Arizona Supreme Court has applied the *Greber* test to a disability insurance case. *See Dickerson v. Hartford Accident & Indem. Co.*, 56 Ariz. 70, 74–75, 105 P.2d 517, 519–20 (1940).

In *Watkins v. Underwriters at Lloyds, London*, 107 Ariz. 56, 481 P.2d 849 (1971), the Arizona Supreme Court applied a two-step inquiry to determine whether the plaintiff's death was directly or indirectly caused or contributed to by disease: (1) was there a disease, and (2) did the disease cause or contribute to the injury or death. *Id.* at 62, 481 P.2d at 855. Where there is no dispute as to the existence of a disease and the effect thereof, the issue becomes a question of law and the *Greber* test applies. *Id.*

The deposition testimony of Dr. Toll, Button's physician, clearly indicates that Button had a preexisting disc problem. Dr. Toll confirmed that Button's degenerating disc became progressively more symptomatic. In his opinion, Button's disability from the injury was not independent of his prior back condition.[1] There is no testimony that indicates that the accident caused Button's disability independent of the preexisting disc problem.

We agree with the district court that Button's degenerative disc condition falls within the third category of *Greber*. Because the accident was not the sole cause of Button's disability, he is not entitled to lifetime benefits.

Button contends that in interpreting the policy, the court should use an ordinary layman's understanding of the term "disease." He argues that since there is no

1. Dr. Toll testified as follows:

A. I think that Mr. Button began showing symptoms of a degenerating disc back as far as 1959. If we follow the course of that, he became progressively more symptomatic. He had episodes early on which indicated that he was protruding a disc fragment. There was a hiatus of roughly two years when he did not have enough in the way of symptoms to come in and let me examine him.

Then he had the episode in question and he protruded a fragmented disc and never recovered from that. So it was a continuing problem, the symptoms of '79 precipitated by the lifting wind incident that's been described, and I don't think I can explain it any better than that.

Q. All right, let me—I appreciate that explanation. I take it then that the episode in December, 1979 and the disc protrusion, was not independent of the prior events?

A. Correct.

evidence that his condition would have become totally disabling without the injury, his preexisting condition was not a disease. This argument is without merit. The Arizona Supreme Court has stated:

> We think these definitions [from Webster's] represent the sense in which "disease" is understood by the layman, and that they imply a condition which either has impaired, or presumably will impair, *if it continues in its usual course of progress*, the normal working of some of the bodily or mental functions.

*Dickerson*, 56 Ariz. at 76–77; 105 P.2d at 520 (emphasis in original). All the evidence indicates Button's disc condition was and is a bodily condition that impaired the functioning of his spine. Button's condition was therefore properly a disease, and the district court was correct in granting summary judgment for CGL that Button's disability was contributed to by disease and not caused solely by accident.

## II. *Incontestability Clause*

Button maintains that CGL is barred by section (b) of the incontestability clause of the policy from reducing his claim on the basis of a preexisting disease. Arizona law requires such a clause in every Arizona disability insurance contract.[2] The policy provides:

> *Incontestable.* (a) After this policy has been in force for a period of two years during the lifetime of the Insured (excluding any period during which the Insured is disabled), it shall become incontestable as to the statements contained in the application.
>
> (b) No claim for loss incurred or disability (as defined in the policy) commencing after two years from the Date of Issue of this policy shall be reduced or denied on the ground that a disease or physical condition not excluded from coverage by name or specific description effective on the date of loss had existed prior to the effective date of coverage of this policy.

We must decide whether this clause bars CGL from reducing or denying Button's claim for total disability commencing after the incontestability period because of a disc disease that preexisted issuance of the policy. Because this narrow question has not been previously passed upon by the Arizona courts nor by this court, we must make "a reasonable determination, based upon such recognized sources as statutes, treatises, restatements and published opinions, as to the result that the highest state court would reach if it were deciding the case." *Molsbergen v. United States,* 757 F.2d 1016, 1020 (9th Cir.), *cert. dismissed,* 473 U.S. 934, 106 S.Ct. 30, 87 L.Ed.2d 706 (1985).

Courts have uniformly construed incontestability clauses as barring an insurer from declaring a policy invalid on the basis

---

2. *Ariz.Rev.Stat.Ann.* § 20–1346 (West Supp. 1987) provides:

*Time limit on defenses*

A. There shall be a provision as follows: "Time limit on certain defenses: (a) After two years from the date of issue of this policy no misstatements, except fraudulent misstatements, made by the applicant in the application for such policy shall be used to void the policy or to deny a claim for loss incurred or disability (as defined in the policy) commencing after the expiration of such two year period."

"(b) No claim for loss incurred or disability (as defined in the policy) commencing after two years from the date of issue of this policy shall be reduced or denied on the ground that a disease or physical condition not excluded from coverage by name or specific description effective on the date of loss had existed prior to the effective date of coverage of this policy."

B. The policy provision set forth in (a) of subsection A of this section shall not be so construed as to affect any legal requirement for avoidance of a policy or denial of a claim during such initial two year period, nor to limit the application of §§ 20–1358, 20–1359, 20–1360, 20–1361 and 20–1362 in the event of a misstatement with respect to age or occupation or other insurance.

C. A policy which the insured has the right to continue in force subject to its terms by the timely payment of premium until at least age fifty or, in the case of a policy issued after age forty-four, for at least five years from its date of issue, may contain in lieu of (a) of subsection A of this section the following provision, from which the clause in parentheses may be omitted at the insurer's option, under the caption "Incontestable:" "After this policy has been in force for a period of two years during the lifetime of the insured (excluding any period during which the insured is disabled), it shall become incontestable as to the statements contained in the application."

of misrepresentation in the application after lapse of the specified period. Annotation, *Construction of Incontestable Clause Applicable to Disability Insurance*, 13 A.L.R.3d 1383, 1385 (1967). Whether a claim may be avoided or reduced based on a disease or disability which predated the policy is not as clear. Button relies upon *Fischer v. Massachusetts Casualty Ins. Co.*, 458 F.Supp. 939, 944–45 (S.D. N.Y.1978), for the proposition that the incontestability clause precludes the insurer from denying benefits for disability caused by diseases which became manifest prior to issuance of the policy, even though the policy covers only "sickness which first manifests itself during" the term of the policy.

■ We believe that the better-reasoned view is that the incontestability clause relates to the validity of the contract and not to the construction of policy provisions. "An incontestability provision in a policy is designed to require the insurer to investigate an act with reasonable promptness if it wishes to deny liability on the grounds of false representation or warranty by the insured.... The purpose of an incontestable clause is to annul all warranties and conditions that might defeat the right of the insured after the lapse of the stipulated time." 18 G. Couch, *Cyclopedia of Insurance Law* § 72:2 (2d ed. 1983).

Cases from other jurisdictions support our conclusion. In *Minnesota Mutual Life Ins. Co. v. Morse*, 487 S.W.2d 317, 319 (Tex.1972), a Texas appeals court held that an incontestability clause should not be applied to change the meaning of policy terms or to enlarge its coverage. An Illinois court has held that an incontestability clause identical to section (b) of the instant policy merely prohibited the insurer from urging that the policy was invalid at its inception. It did not prohibit the insurer from defending on the ground that a preex-

isting disease proximately caused the disability. *Carlson v. New York Life Ins. Co.*, 76 Ill.App.2d 187, 202–03, 222 N.E.2d 363, 368 (1966).

In *Posner v. New York Life Ins. Co.*, 56 Ariz. 202, 210, 106 P.2d 488, 492 (1940), the Arizona Supreme Court held that an incontestability clause in a disability policy did not bar the insurer's efforts to show that the disability was caused by a disease existing on the policy date. The court noted that the insurer was not challenging the validity of the policy based on a preexisting disease, but claiming that the disability was not covered by the policy. *Id.* The court said that such policies do not cover disabilities caused by disease or injury which predate the policy and therefore, an incontestability clause could not bring such disabilities within the policy coverage. *Id.*

We are not dissuaded by the different result in *Robison v. Brotherhood of Railroad Trainmen Ins. Dept., Inc.*, 73 Ariz. 352, 241 P.2d 791 (1952). Robison stated that he had not suffered from tuberculosis and subsequently claimed disability based on it; the insurer rejected the claim on the ground that the policy covered only diseases "contracted during the term" of the policy and the disease predated the policy. *Id.* at 353–54, 241 P.2d at 792–93. The Arizona Supreme Court held that the specific language of the incontestability clause precluded inquiry into representations made by the insured concerning his physical condition after the lapse of two years: "[A]ny illness from which [the insured] thereafter suffers must be conclusively presumed to have arisen after the issuance of the policy." *Id.* at 354–56, 241 P.2d at 793–94. The court noted that the incontestability clause in *Posner* was "general in its terms," and so did not mandate the same result.[3] *Id.* at 355–56, 241 P.2d at 794.

In the case before us, Button does not argue that his disability was caused by a

3. The incontestability clause in *Robison* provided: " 'If this Certificate has been in force two years during the lifetime of the Member, *it shall be incontestable as to the accuracy of the representations contained in the application herefor and as to the physical condition of the Member on the date hereof....* ' " (Emphasis in original) 73 Ariz. at 354, 241 P.2d at 792. The *Posner* clause provided: "This policy shall be incontest-

able after two years from its date of issue except for nonpayment of premium." *Id.* at 355–56, 241 P.2d at 794.

The clause at issue in this case does not contain language precluding the insurer from inquiring into the insured's physical condition on the policy date as did the clause in *Robison*. We note that the Arizona legislature enacted the

disc condition preexisting issuance of the policy. Rather, he contends that his disability was caused solely by the 1979 lifting accident and that the incontestability clause precludes CGL from inquiring into his back condition to contest his claim. CGL, however, does not argue that Button's claim is barred because his disc condition predated the policy. CGL merely contends that the disease, *regardless of when it arose,* contributed to Button's disability. The determining factor here is causation, not the insured's physical condition on the date of the policy. Causation was not at issue in *Robison;* the court did not address whether the insured's disability was caused solely by tuberculosis.

■ The policy does not penalize Button for having a disease preexisting the issuance of the policy. Under the *Certain Disabilities Deemed Sickness* clause, any injury contributed to by disease, whether preexisting the policy or not, is deemed to be a sickness. The definitional clause merely spells out the scope of the risks covered by the contract, and does not preclude reliance upon a condition which preexisted issuance of the policy to determine the duration of benefits. The incontestability clause does not invalidate those provisions.[4]

### III. *Bad Faith and Estoppel*

■ Our conclusion that CGL properly limited Button to sickness benefits requires us to reject Button's bad faith claim. We agree that CGL complied with the policy by paying Button sickness benefits rather than lifetime injury benefits. CGL's refusal to continue payments beyond the five year period cannot be considered in bad faith.

■ Button additionally contends that CGL should have notified him sooner that the benefits were pursuant to sickness rather than accident. Button has failed to demonstrate that CGL had a legal or contractual duty to notify him. We do not believe that CGL's delay constitutes bad faith.

■ Finally, this court rejects Button's estoppel claim. The doctrine of estoppel is well established in Arizona. *United States Fidelity and Guaranty Co. v. Stewart's Downtown Motors,* 336 F.2d 549, 556 (9th Cir.1964). The essential elements of equitable estoppel are "(1) conduct by which one induces another to believe in certain material facts; and (2) the inducement results in acts in justifiable reliance thereon; and (3) the resulting acts cause injury." *Heltzel v. Mecham Pontiac,* 152 Ariz. 58, 61, 730 P.2d 235, 238 (1986). Button contends that CGL's initial classification of his claim as one resulting from an accident amounted to an implied representation that he would continue to receive benefits based on that classification. There is no showing, however, that Button relied on such alleged misrepresentation to his detriment. Button's estoppel claim therefore fails.

AFFIRMED.

---

incontestability law in 1954, two years after the *Robison* decision.

**4.** For a discussion of the rationale for so limiting incontestability clauses *see* 1A J. Appleman, *Insurance Law and Practice* § 335 (1981).