TROTT, Circuit Judge:
 

 Ogden Martin Systems (“Ogden Martin”) entered into a cost-sharing contract with San Bernardino County (“County”) for development of a waste disposal facility. The facility was never built, and Ogden Martin sued on the contract for reimbursement of its costs and alternatively for the equitable remedy of rescission. The district court granted summary judgment for the County, finding rescission inappropriate because the County had received no benefit, and that the contract was voidable because Ogden Martin had violated state franchise tax laws. Both rulings were in error, and we reverse.
 

 
 *1282
 
 I
 

 In 1982, the County hired a consulting firm to determine the feasibility of building a waste-to-energy facility as an alternative to using landfills to dispose of solid waste. The consulting firm advised the County to construct the facility, although it warned the County that all such facilities emit air pollutants. In 1984, the County signed a memorandum of understanding with a contractor providing that the County would use its “best efforts” to develop the waste-to-energy facility. When one of the subcontractors withdrew, the County solicited Ogden Martin to participate in the project.
 

 Ogden Martin entered into a cost-sharing contract with the County providing that the County would reimburse Ogden Martin for up to $6 million if the County chose not to proceed with the project. However, the County would not be liable for reimbursement under the contract if the waste-to-energy facility’s negative environmental impact would outweigh its positive impact. The County’s Board of Supervisors approved the cost-sharing contract.
 

 After signing the contract, Ogden Martin expended considerable sums in producing an Environmental Impact Report (“EIR”) and developing the project. Ogden Martin alleges the County interfered with the EIR’s production and forced Ogden Martin to state falsely in the EIR that the waste-to-energy facility would produce significant air pollution. Ogden Martin alleges the standards used in the EIR violated the California Environment Quality Act.
 
 See
 
 Cal.Pub.Res.Code §§ 21000-192 (West 1991).
 

 After the EIR was released, the Board of Supervisors voted not to pursue the project. Ogden Martin asserts this vote breached the contract because the Board of Supervisors rejected the project for reasons other than its negative environmental impact. After the vote, the County promptly notified Ogden Martin it would not pay the approximately $6.5 million Ogden Martin spent to develop the project.
 

 Ogden Martin filed a complaint for breach of contract and alternatively to rescind the contract. The County moved for summary judgment on all counts. The district court granted summary judgment on the rescission claims, finding no benefit had been conferred on the County. The district court denied summary judgment on the breach of contract claims, finding genuine issues of contract interpretation.
 

 Subsequently the County discovered that, at the time Ogden Martin signed the contract, Ogden Martin had not paid a $300 tax owed to the California Franchise Tax Board.
 
 [1]
 
 The County moved for summary judgment on the remaining breach of contract claims, arguing Ogden Martin’s failure to pay the tax made the contract voidable under California law. The district court agreed and granted the summary judgment motion.
 

 Ogden Martin timely appealed the district court’s grant of summary judgment on the rescission and breach of contract claims. The County cross-appeals, arguing we can affirm summary judgment on the contract claims because the contract exonerated it from liability.
 

 II
 

 We review de novo the district court’s grant of summary judgment based on its interpretation of state law.
 
 In re Kirkland,
 
 915 F.2d 1236, 1238 (9th Cir.1990). We must determine whether, viewing the evidence in the light most favorable to the non-moving party, there are any genuine issues of material fact, and whether the district court correctly applied the relevant law.
 
 Danning v. Miller (In re Bullion Reserve),
 
 922 F.2d 544, 546 (9th Cir.1991);
 
 see also United States v. Hatcher,
 
 922 F.2d 1402, 1045 (9th Cir.1991).
 

 
 *1283
 
 III
 

 Ogden Martin sued for rescission of the contract based on fraudulent inducement and mistake. In a rescission action, the complaining party may receive restitution for all benefits conferred on the other party, restoring both parties to economic
 
 status quo ante.
 
 Cal.Civ.Code § 1692 (West 1985);
 
 see St. Regis Paper Co. v. Royal Indus.,
 
 552 F.2d 309, 313 (9th Cir.),
 
 cert. denied,
 
 434 U.S. 996, 98 S.Ct. 633, 54 L.Ed.2d 490 (1977). Restitution is discretionary with the court, however, and is not required even when rescission is ordered.
 
 Id.
 
 at 314.
 

 The district court relied on
 
 Runyan v. Pacific Air Indus.,
 
 2 Cal.3d 304, 85 Cal.Rptr. 138, 466 P.2d 682 (1970), to find that the County received no benefit. We hold the district court erred in finding that no benefit had been conferred on the County, because Ogden Martin provided valuable information which partially relieved the County’s duty to address its solid-waste disposal problems. We therefore reverse summary judgment on the rescission claims.
 

 Runyan
 
 offers little or no support for the district court’s holding, because it does not discuss what qualifies as a “benefit.” According to
 
 Runyan,
 
 the rescissory relief available under California Civil Code section 1692 invokes the “traditional and deep-rooted principles of ... equity,” such that the “
 
 ‘aggrieved
 
 party shall be awarded
 
 complete relief’
 
 and that the court ‘may otherwise in its judgment adjust the equities between the parties.’ ”
 
 Id.
 
 at 318, 85 Cal.Rptr. 138, 466 P.2d 682 (quoting Cal. Civ.Code § 1692) (emphasis in original). Bearing in mind these equitable principles, we now turn to the contentions of the parties as to whether Ogden Martin conferred a benefit on the County.
 

 Ogden Martin asserts it conferred a benefit on the County by preparing the EIR because the County was: (1) required by law to create a solid-waste disposal plan; (2) required by the California Environmental Quality Act to prepare an EIR before deciding on a waste disposal plan; (3) able to use the information in the EIR for other projects and had in fact done so.
 

 Ogden Martin spent nearly $3.5 million to produce the EIR, as well as an additional $3.2 million to purchase air emission offsets.
 
 [2]
 
 The County relied on the EIR in deciding to vote against the waste-to-energy project; this reliance demonstrates the EIR’s value. The EIR also has value beyond the immediate project, Ogden Martin argues, because an EIR is “a compilation of environmental, sociological and other data, and the information thus developed may be utilized in other Environmental Impact Reports.” In fact, the County used the EIR prepared by Ogden Martin in an application to expand an existing landfill. These uses of the EIR create a genuine issue of material fact as to whether the County received a benefit from Ogden Martin.
 

 The County makes four arguments regarding the availability of rescission. First, the County claims that the rescission claims are barred by Ogden Martin’s failure to pay its taxes, which rendered the contract voidable. Because we find the contract was not voidable, see section IV
 
 infra,
 
 this argument does not bar rescisso-ry relief.
 

 Second, the County contends rescissory relief is unavailable because Ogden Martin cannot be placed back in
 
 status quo ante.
 
 The County claims the EIR is not a “thing of value” received through the contract, and therefore cannot be “restored” to Ogden Martin. However, the County concedes in a footnote in its brief that portions of EIRs for previous projects can be used in subsequent EIRs. Apparently the County argues that since the
 
 entire
 
 EIR cannot
 
 *1284
 
 be used as is, it has no value. This argument clearly lacks merit.
 

 Additionally, the County shoots itself in the foot by claiming “the process was a statutory requirement, not a monetary benefit bestowed on the County.” The County concedes it was required by law to produce an EIR. Ogden Martin relieved the County of this burden. The County cannot now argue that Ogden Martin’s assumption of this burden is not a “monetary benefit.” Apparently, the County believes any benefit which is not liquidated when conferred is not a benefit. We do not adopt so narrow a view.
 
 [3]
 

 The County’s third and fourth contentions are that rescission is unavailable because Ogden Martin assumed the risk that the project would not go through, so there is no mistake upon which rescission can be based. Ogden Martin alleges it reasonably relied on the County’s statements that it would proceed with the project in spite of the nominal increase in air pollution. Because Ogden Martin produced affidavits to support this contention, there is a genuine issue of material fact as to whether Ogden Martin reasonably relied on the County’s assertions.
 
 [4]
 

 We reverse the district court’s summary judgment on the rescission claims because we conclude Ogden Martin raised a genuine issue of material fact as to whether it bestowed a benefit on the County. The rescission claims should be tried before a fact-finder, not disposed of on summary judgment.
 

 IV
 

 The district court held the contract between Ogden Martin and the County voidable because Ogden Martin had not paid a $300 tax imposed on all corporations doing business in California. The district court’s opinion on this point follows in its entirety:
 

 A contract made by a corporation doing business in California while that corporation has failed to perform its franchise tax obligations is voidable at the option of any party to the contract, other than the [delinquent] taxpayer. Cal.Rev. & Tax.Code § 23304.[
 
 5
 
 ] The contract is voidable even though the corporation’s privileges have not been suspended or forfeited by the Secretary of State.
 
 White Dragon Productions, Inc. v. Performance Guarantees, Inc.,
 
 196 Cal.App.3d 163, 171, 241 Cal.Rptr. 745 (1987). Revivor of the corporation does not affect this right. Cal.Rev. & Tax.Code § 23305a.
 

 After issuing this ruling, the district court granted summary judgment against Ogden Martin on its breach of contract claims. On appeal, Ogden Martin argues
 
 White Dragon
 
 was wrongly decided and we should not follow it. We agree.
 

 When reviewing issues of state law, we are “bound to follow the decisions of a state’s highest court in interpreting that state’s law.”
 
 Olympic Sports Products v. Universal Athletic Sales Co.,
 
 760 F.2d 910, 912-13 (9th Cir.1985),
 
 cert. denied,
 
 474 U.S. 1060, 106 S.Ct. 804, 88 L.Ed.2d 780 (1986) (citing
 
 Aydin Corp. v. Loral Corp.,
 
 718 F.2d 897, 904 (9th Cir.1983)). If no ruling
 
 *1285
 
 exists from the highest court of the state, we must follow intermediate appellate decisions unless “convinced by other persuasive data that the highest court of the state would decide otherwise.”
 
 West v. American Tel. & Tel. Co.,
 
 311 U.S. 223, 237, 61 S.Ct. 179, 183, 85 L.Ed. 139 (1940). We are less strictly compelled to follow intermediate appellate decisions when those decisions have not been appealed to the state’s highest court.
 
 Id. White Dragon
 
 was not appealed. We decline to adopt the result
 
 White Dragon
 
 would mandate in the present case because we believe such a result would conflict with California’s statutory scheme for enforcing its franchise tax laws.
 
 [6]
 

 In
 
 White Dragon,
 
 the court voided a contract between Performance Guarantees, an out-of-state corporation, and White Dragon Productions, a California corporation. When the parties entered into the contract, Performance Guarantees had not complied with franchise tax filing and payment requirements. After finding Performance Guarantees was “doing business” in California and thus subject to franchise tax laws, the court held Performance Guarantees had violated Article 7 of the Revenue and Taxation Code (“Code”) by failing to pay tax and file necessary documents.
 

 While the record contains no direct evidence that Performance Guarantees has ever been suspended by the California Secretary of State, we think the language of Revenue and Taxation Code section 23305a
 
 [7]
 
 is nevertheless applicable herein. It is both fair and logical that the “action, defense or right” which would accrue against a suspended tax-delinquent foreign corporation should also accrue against a nonqualified, and hence nonsuspended, tax-delinquent foreign corporation. By saying this, we do not suggest that suspension or forfeiture is automatic; what concerns us is that the Franchise Tax Board can only submit names of tax-delinquent foreign corporation to the Secretary of State for suspension purposes if it is aware of their existence. When the state has no record of their existence, suspension or forfeiture is impossible. It would defy logic to immunize a nonqualified tax-delinquent corporation from the “action, defense or right” which would have accrued against it had it followed this state’s qualification procedures.
 

 
 *1286
 

 White Dragon,
 
 196 Cal.App.3d at 171, 241 Cal.Rptr. 745 (citation omitted) (footnotes omitted). Although the court recognized that the usual procedure is for the Secretary of State to suspend a delinquent corporation, giving the corporation notice of its delinquency, it decided to abandon the suspension procedures when faced with an unregistered
 
 foreign
 
 corporation. The court held that failure to pay taxes amounted to a violation of Article 7 and rendered the contract voidable under section 23304. However, nothing in the statute provides that a court may abridge the suspension procedures when a foreign corporation is involved. This exception was created out of whole cloth.
 

 We believe this case was wrongly decided. It runs counter to the statutory scheme to enforce the franchise tax laws, as well as the reasoning of other California cases concerning suspension for failure to comply with the franchise tax reporting and payment requirements. Section 23301 of Article 7 provides in part that “exercise of the corporate powers, rights and privileges of a foreign taxpayer ...
 
 may
 
 be forfeited if ... any tax ... is not paid” within the required period. Cal.Rev. & Tax.Code § 23301 (West Supp.1991) (emphasis added). Section 23302 provides: “The Franchise Tax Board shall transmit the names of taxpayers to the Secretary of State as to which the suspension or forfeiture provisions of Section 23301 ... become applicable, and the suspension or forfeiture therein provided for
 
 shall thereupon become effective.”
 
 Cal.Rev. & Tax. Code § 23302 (West Supp.1991) (emphasis added). This language contemplates that suspension will be effected by the Franchise Tax Board and the Secretary of State. “Suspension [of corporate powers] is not automatic, and does not take effect until the name of the corporation is transmitted by the Franchise Tax Board to the Secretary of State.”
 
 Damato v. Slevin,
 
 214 Cal.App.3d 668, 671, 262 Cal.Rptr. 879 (1989);
 
 see also Mediterranean Exports v. Superior Court,
 
 119 Cal.App.3d 605, 617, 174 Cal.Rptr. 169 (1981).
 

 Unless the powers of a corporation are suspended by the Franchise Tax Board, the corporation does not violate Article 7 by forming contracts. Hence, the contracts of a corporation whose powers have not been suspended are not voidable under section 23304. Contracts are voidable under this section
 
 only
 
 if the contract is in violation of Article 7, not for
 
 any
 
 violation of the franchise tax laws.
 

 The reasoning of the district court and the
 
 White Dragon
 
 court is further weakened by the statute’s amendment in 1978, in which the legislature replaced the former mandatory “shall be suspended” to the discretionary
 
 “may
 
 be suspended” (emphasis added). The use of “may” implies the exercise of discretion by the Secretary of State, not a private litigant seeking to avoid a disadvantageous contract. Nothing in the language of section 23301 supports the conclusion that a private party has the right to void a contract under section 23304 when a foreign corporation is subject to the
 
 possibility
 
 of suspension.
 

 Ogden Martin correctly argues that
 
 Mediterranean Exports,
 
 119 Cal.App.3d at 617, 174 Cal.Rptr. 169, supports their contention that no violation of Article 7 can occur unless the Secretary of State suspends a corporation’s powers. In
 
 Mediterranean Exports,
 
 the trial court held that because the defendant had not complied with the Code, it could not defend itself against a lawsuit. Although the appellate court recognized that a corporation may neither prosecute nor defend an action if its powers have been suspended under section 23301,
 
 id.
 
 at 614, 174 Cal.Rptr. 169, it permitted the defendant to appear because the defendant’s corporate powers had not been suspended pursuant to section 23301. “[T]he statute is not self-executing.”
 
 Id.
 
 at 615, 174 Cal.Rptr. 169. Because the defendant’s powers had not been suspended, the forfeiture provisions of section 23301 were not in effect and did not bar the defendant from making a defense.
 
 Id.
 
 at 617-18, 174 Cal.Rptr. 169.
 
 Mediterranean Exports
 
 supports our conclusion that no
 
 *1287
 
 violation of Article 7 can occur without affirmative action by the Franchise Tax Board or the Secretary of State to suspend a corporation’s powers.
 

 The County argues
 
 Mediterranean Exports
 
 does not control because it concerns the ability to appear in court, rather than the voidability of contracts, and because
 
 White Dragon
 
 supersedes it. While it is correct that
 
 White Dragon
 
 is more closely on point, its reasoning is inconsistent with other California cases concerning the suspension of corporate powers.
 
 Mediterranean Exports
 
 is helpful in illuminating the requirement that a corporation have
 
 actually
 
 been suspended by the state, even though it is factually not as similar to the present case as
 
 White Dragon.
 

 To recognize the judicially created exception of
 
 White Dragon,
 
 which provides for Article 7 sanctions in the absence of action by the Franchise Tax Board, is to twist the statutory scheme and subvert the purpose of the statute.
 
 [8]
 
 Because we believe
 
 White Dragon’s
 
 reasoning was faulty, we hold the district court erred in relying on
 
 White Dragon
 
 in granting summary judgment for the County.
 

 V
 

 The County cross-appeals the district court's denial of its first motion for summary judgment on Ogden Martin’s breach of contract claims. The district court found Ogden Martin had raised a “genuine issue of contract interpretation weighing against summary judgment.” Ogden Martin asserted that the project had been disapproved by the board of supervisors for political reasons, not because of potential adverse environmental consequences. The contract provided that Ogden Martin would bear its own costs only if the project was abandoned because of the environmental impact. Because we find that the evidence regarding the reasons for the project disapproval created a genuine issue of material fact, we affirm the district court’s initial denial of the County’s summary judgment motion.
 

 VI
 

 We remand to the district court for trial on both the breach of contract and rescission claims. Ogden Martin’s allegations about the County’s use of the EIR and the purchase of air emission offsets raise a genuine issue of material fact as to whether the County received a benefit from Ogden Martin. The breach of contract claims are not barred by
 
 White Dragon,
 
 because we believe its reasoning is not supported by the Code or relevant case law.
 

 Accordingly, the district court’s decision is REVERSED and the case is REMANDED for further proceedings consistent with this opinion.
 

 [1]
 

 . We note, however, that the franchise tax was paid by Ogden Martin’s subsidiary, Ogden Martin Systems of San Bernardino, Inc., a company formed for this project. Ogden Martin and the County had originally contemplated that the subsidiary would sign the contract. The subsidiary did not sign because, at the last minute, the County insisted that Ogden Martin sign instead. Ogden Martin itself also paid the tax later.
 

 [2]
 

 . Offsets are obtained by paying existing polluters to reduce emissions or shut down. The South Coast Air Quality Management District requires that any pollution created by a new project be outweighed by the purchase of offsets, such that the environment receives a net reduction in air pollution.
 

 [3]
 

 . The County also argues that rescission provides only for undoing the contract, not for compensating the rescinding party for any benefits it conferred. The County asserts that because the result of the EIR was to "make known” the environmental impact of the project, all rescission can offer is to make that impact "unknown.” Because the EIR is now in the public domain, the impact cannot be made "unknown." Hence, the County argues, rescission is unavailable. This overly restrictive view of rescission ignores the equitable and flexible nature of the remedy.
 

 [4]
 

 . The district court did not rule on the issue of reasonable reliance. The sole stated reason for the district court's ruling on the rescission claims was Ogden Martin’s failure to show that a benefit had been conferred on the County. Since the issue of reasonable reliance is a factual question properly resolved by the district court, we will not address it for the first time on appeal.
 

 [5]
 

 .Section 23304 provides: “Every contract made in violation of this article is hereby declared to be voidable, at the instance of any party other than the taxpayer." Cal.Rev. & Tax.Code § 23304 (West 1979). “This article” refers to Article 7 of the Revenue and Taxation Code, Suspension and Revivor, §§ 23301-23305a.
 

 [6]
 

 . Since the decision in
 
 White Dragon
 
 and the district court's decision in this case, the California legislature has modified the applicable sections of the Revenue and Taxation Code ("Code”). Section 23304 has been repealed and replaced with section 23304.1, which partially adopts the reasoning of
 
 White Dragon
 
 but mitigates its harsh result. Section 23304.1 provides that if a foreign corporation violates certain sections of the Code, any contract entered into by the foreign corporation is voidable by any other contracting party, in accordance with
 
 White Dragon.
 
 However, the harsh penalty of
 
 White Dragon
 
 is eliminated by the cure provision of section 23305.1, which provides that a foreign corporation can enforce its otherwise voidable contracts if it files the necessary documents and pays taxes and penalties.
 

 Under this new statutory framework, Ogden Martin could pay the necessary penalties and render the contract enforceable,
 
 if it had not filed this action.
 
 However, the legislature expressly provided that the amendments to the Code "shall not be construed in any manner that would affect the rights of any party to any action that has been commenced in a court of competent jurisdiction prior to the date of enactment of this act.” California Assembly Bill 2773 § 17(c), enacted September 14, 1990. The bill also provides that the rights of any party to an action already commenced "shall be determined by the law in effect prior to the effective date of this act.”
 
 Id.
 
 Since the legislature intended not to affect this action (the County was active in adding section 17(c) to the bill), the newly amended Code sections do not change our analysis.
 

 Ogden Martin raises several constitutional challenges to section 17(c), claiming the carve-out is a bill of attainder, and violates due process and equal protection. Because we find in Ogden Martin's favor on other grounds, we do not consider its challenges to section 17(c).
 

 [7]
 

 . Section 23305a provides that a corporation which has been suspended can apply for reinstatement of its corporate powers. This section was facially inapplicable to Performance Guarantees because it had not been suspended. The court was referring to the provision that the reinstatement shall be "without prejudice to any action, defense or right which has accrued by reason of the original suspension or forfeiture.”
 

 [8]
 

 . The purpose of section 23301 " ‘is to put pressure on the delinquent corporation to pay its taxes,’”
 
 Damato,
 
 214 Cal.App. at 673, 262 Cal.Rptr. 879 (citation omitted), not to create a windfall for a private party. "‘There is little purpose in imposing additional penalties after the taxes have been paid.’ ”
 
 Id.
 
 (quoting
 
 Peacock Hill Assn. v. Peacock Lagoon Constr. Co.,
 
 8 Cal.3d 369, 371, 105 Cal.Rptr. 29, 503 P.2d 285 (1972)).