28 F.3d 108
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
William D. SAPP, III, Plaintiff-Appellant,
v.
The PAUL REVERE LIFE INSURANCE COMPANY, Defendant-Appellee.
 No. 93-56290.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted March 8, 1994.
Decided June 13, 1994.
 
 Before: WALLACE, Chief Judge, FARRIS and KLEINFELD, Circuit Judges.
 
 MEMORANDUM
 
 1
 Sapp appeals from the district court's summary judgment in favor of the Paul Revere Life Insurance Company (Paul Revere). The district court had jurisdiction pursuant to 28 U.S.C. Sec. 1332. We have jurisdiction over this timely appeal pursuant to 28 U.S.C. Sec. 1291.
 
 
 2
 We review a district court's summary judgment de novo, Oltarzewski v. Ruggiero, 830 F.2d 136, 138 (9th Cir.1987), and apply the substantive law of California in this diversity action. See Strassberg v. New England Mut. Life Ins. Co., 575 F.2d 1262, 1263 (9th Cir.1978). In ascertaining California law, we must follow the decisions of the California Supreme Court. Ogden Martin Systems, Inc. v. San Bernardino County, 932 F.2d 1284, 1288-89 (9th Cir.1991). In the event the California Supreme Court has not ruled, we are bound by intermediate appellate court decisions unless persuasive data convinces us the highest court would decide otherwise. Id. Decisions of intermediate appellate courts which have not been appealed to the state's highest court do not have to be strictly followed. Id. We affirm.
 
 
 3
 * On appeal, Sapp first contends that California Insurance Code Sec. 10350.2 precludes Paul Revere from denying his claim of total disability resulting from Acquired Immune Deficiency Syndrome (AIDS) because he knew he had tested positive for the human immunodeficiency virus (HIV) before the policy issued. Paul Revere denied coverage, contending that illnesses which had manifested themselves before the effective date of coverage were not covered under the terms of the policy. Paul Revere relies on the policy's definition of "Sickness," which encompassed only diseases which had first manifested themselves after the policy issued. Sapp contends section 10350.2 itself extends coverage to preexisting conditions not specifically excluded from coverage by name or specific description or otherwise contested during the contestability period. Sapp contends section 10350.2 mandated coverage precludes Paul Revere from defining other terms within the policy to eliminate coverage for known preexisting conditions.
 
 
 4
 Section 10350.2 requires disability policies to contain an incontestability clause, modeled after one of two types of clauses contained in the statute. Paul Revere included an incontestability clause in the policy it issued to Sapp. Sapp does not dispute the conformity of this clause to the statute. Paul Revere similarly does not dispute that it failed to exclude coverage of positive HIV status or AIDS by name or specific description or contest Sapp's application during the contestability period. Section 10.2 of Paul Revere's policy, as a legislatively-required term, necessarily must govern over any conflicting terms in the policy and nullifies their effect. Grubb v. Ranger Ins. Co., 77 Cal.App.3d 526, 529 (1978) (Grubb ).
 
 
 5
 In addressing Sapp's claim, we first consider whether the California legislature intended for section 10350.2 to extend the coverage otherwise offered by a disability policy. No legislative history accompanied the passage of section 10350.2, and the California Supreme Court has never interpreted this provision. No intermediate California court has addressed the intent of the California legislature in enacting section 10350.2.
 
 
 6
 Prior to section 10350.2's enactment, two California cases interpreted incontestability terms that were not required by California legislation and thus functioned as any other term within the contract. New York Life Ins. Co. v. Hollender, 38 Cal.2d 73, 77-78 (1951) (Hollender ); Cohen v. Metropolitan Life Ins. Co., 32 Cal.App.2d 337, 346 (1939) (Cohen ). Cohen concluded that the insurer's incontestability term did not provide an independent source of coverage. Cohen, 32 Cal.App.2d at 346. The extent of coverage depended on other terms within the policy. The incontestability clause did not extend coverage beyond that provided by other terms within the policy. Id. In Hollender, the California Supreme Court determined that an incontestability term could only be used to contest the validity of a contract. Hollender, 38 Cal.2d at 77. The incontestability term prevented an insurer from arguing a contract was void ab initio because of fraud in the application. It could not be used to enforce policy terms. Id.
 
 
 7
 Cohen and Hollender do not conclusively determine the effect section 10350.2 was intended to have. Cohen and Hollender interpreted an ordinary contract term included solely at the parties' volition, not a term required by legislation. Statutorily mandated terms supersede conflicting terms and nullify their effect. Grubb, 77 Cal.App.3d at 529. Cohen and Hollender also interpreted clauses with materially different language than the language contained in section 10350.2. The clauses in Cohen and Hollender provided the Policy was incontestable. Section 10350.2, in contrast, states the Claim is incontestable.
 
 
 8
 Cohen and Hollender are nevertheless instructive. The legislature is presumed to enact new legislation with knowledge of judicial decisions. People v. McGuire, 14 Cal.App.4th 687, 694 (1993). The California legislature enacted section 10350.2 presumedly knowing the California courts' view of incontestability terms. In enacting section 10350.2, the California legislature provided no indication in the section itself or the legislative history that it intended to change the California courts' interpretation of incontestability terms. We therefore conclude that the California legislature intended for the incontestability term it required to affect only a policy's validity and for other terms within the policy to define the extent of coverage. The incontestability clause does not provide an independent source of coverage or alter the extent of coverage otherwise offered by a policy.
 
 
 9
 This view of an incontestability clause's function is consistent with our decision in Button v. Connecticut Gen. Life Ins. Co., 847 F.2d 584, 588 (9th Cir.), cert. denied, 488 U.S. 909 (1988), in which we addressed an incontestability clause required by Arizona law. We concluded an incontestability clause only affects a policy's validity, not the construction of its terms. The policy contained an incontestability clause as well as a definitional clause which limited the scope of risks covered by the policy. We held the incontestability clause did not invalidate the definitional clause's limitation of the risks covered by the policy. Id. at 589. The incontestability clause only affected the validity of the contract and thus did not preclude the insurer from relying upon a preexisting condition to determine the duration of benefits. Id. at 588-89.
 
 
 10
 Whatever doubt may exist regarding the intended effect of section 10350.2, we are confident that section 10350.2 was not intended to cover known losses, as urged by Sapp. It is axiomatic that insurance does not cover known losses. Insurance covers the risk of loss. Metropolitan Life Ins. Co. v. State Bd. of Equalization, 32 Cal.3d 649, 654 (1982). California Insurance Code Sec. 22 provides that "[i]nsurance is a contract whereby one undertakes to indemnify another against loss, damage, or liability arising from a contingent or unknown event." (Emphasis added.) Section 22 forms part of every contract of insurance. General Accident, Fire & Life Assur. Corp. v. Industrial Accident Comm'n, 196 Cal. 179, 187 (1925). If uncertainty exists in statutory interpretation, we presume the legislature intended a reasonable result consistent with the statute's purpose, not absurd consequences. Harris v. Capital Growth Investors XIV, 52 Cal.3d 1142, 1165-67 (1991). We consider the interpretation urged by Sapp that section 10350.2 was intended to cover losses known to the insured to be an absurd consequence, contrary to basic principles of insurance and section 22 of the California Insurance Code. In the absence of evidence that the California legislature intended the contrary, we decline to interpret section 10350.2 as requiring insurance policies to cover losses known to the insured.
 
 
 11
 We have no difficulty concluding that Sapp seeks coverage of a "known" loss. Sapp knew he had tested positive for the HIV virus at the time he applied for disability insurance. The district court ruled that AIDS was a manifestation of HIV, and Sapp did not contest this finding on appeal. Sapp's knowledge of his positive HIV status constituted knowledge of the event for which he seeks benefits, total disability resulting from AIDS. Based on section 22 and the basic principle that insurance covers risks, not known losses, we hold that the California legislature did not intend for section 10350.2 to provide coverage of losses known to an insured in the absence of evidence to the contrary.
 
 II
 
 12
 We now consider Sapp's contention that the terms of Paul Revere's policy provide coverage of his claim. The policy states that Paul Revere "will pay the benefits provided in this Policy for loss due to Injury or Sickness." Part 1, entitled DEFINITIONS, defines Sickness as "sickness or disease which first manifests itself after the Date of Issue and While Your Policy is in force."
 
 
 13
 Sapp contends sections 3.2 and 10.2, read together, indicate the policy covers known preexisting conditions which had manifested themselves before the policy issued, such as his disability resulting from AIDS.
 
 
 14
 We apply ordinary rules of contractual interpretation in interpreting insurance contracts and try to give effect to the parties' intentions. Bank of the West v. Superior Court, 2 Cal.4th 1254, 1264 (1992). We hold the policy unambiguously excludes coverage of preexisting conditions known to the insured which had manifested themselves before the policy issued. The policy clearly states it only covers disabilities due to "Sickness" and defines "Sickness" to exclude conditions manifested before the policy issued. We do not read sections 3.2 and 10.2 as creating uncertainty when read together with the policy's statement of coverage and definition of sickness. The clear language of the policy governs.
 
 
 15
 AFFIRMED.