[Civ. No. 4357. Second Appellate District, Division One.—July 3, 1924.]

MARY L. FINCH, Executrix, etc., v. B. A. FINCH, as Trustee, etc., Appellant.

[1] CORPORATIONS — JUDGMENT AGAINST CORPORATION — PAYMENT BY SURETY ON UNDERTAKING ON APPEAL—ACTION TO RECOVER AMOUNT PAID—PAYMENT—PLEADING.—In an action by an executrix against the defendant as trustee of a defunct corporation and individually as a stockholder of said corporation to recover the amount paid by plaintiff on an undertaking on appeal taken by the corporation from a judgment rendered against it, which appeal resulted in an affirmance of said judgment, an allegation in the complaint "that nothing has been paid on account of the liability of said corporation or of its trustees or stockholders, either in proportion to their respective holdings or otherwise" was a sufficient allegation that nothing had been paid on account of the liability upon which the action was brought.

[2] ID.—PAYMENT OF JUDGMENT OUT OF PARTICULAR PROPERTY—DIRECTION IN JUDGMENT UNAUTHORIZED.—In such action, the provision in the judgment that a stated amount was payable only from the assets and property of the defunct corporation, which forfeited its charter on a named date, "in which it then had any interest, or from the proceeds of such property or assets," was unauthorized, where the judgment was rendered more than six years after the corporation had forfeited its charter, and the defendant was not responsible for such provision in the judgment, and there was nothing in the nature of the action by which the court was authorized to direct that the judgment be paid out of a specified fund, or that the lien thereof attach to particular property.

[3] ID.—JUDGMENT—EXTENT OF LIEN.—A judgment ordinarily attaches to the real property generally of the judgment debtor, and the

kind or the extent of the lien created by the judgment cannot be prescribed or regulated by the court pronouncing the judgment.

[4] Id.—Modification of Judgment.—In such action, the judgment which unauthorizedly directs payment out of particular assets and property of the corporation may, in that regard, be corrected under an order of modification, rather than by an order of reversal of the entire judgment.

[5] Id. — Stockholders' Liability — Statute of Limitations. — An action to enforce a stockholder's liability on a corporate indebtedness must be commenced within three years after the liability is created.

[6] Id. — Payment of Judgment Against Corporation — Stockholders' Liability—Action by Surety—Commencement of Statute of Limitations.—The statute of limitations applicable to an action against a stockholder of a corporation on his statutory liability brought by a surety on an undertaking on appeal taken by said corporation from a judgment against it, by which undertaking the surety promised to pay the judgment in the event of affirmance thereof, does not commence to run until the surety has met the obligation imposed upon him by the undertaking.

[7] Id.—Trustee of Corporation — Cancellation of Own Stock—Fraud on Stockholders—Invalidity of Cancellation.—To permit a stockholder of a defunct corporation who is the trustee for not only the corporation but also for the stockholders thereof to accept, as such trustee, a cancellation of his own stock, and thus relieve himself from liability for debts of the corporation and increase the liability of the remaining stockholders, would be to recognize the right of a trustee to benefit himself by virtue of such a transaction, to the injury of others to whom he stands in a fiduciary relationship. Such an attempted cancellation of stock of such trustee is in the nature of a fraud and as such is a nullity.

[8] Id.—Powers of Trustees—Presumptions.—Notwithstanding the broad powers possessed by trustees of a defunct corporation, rendered such because of the forfeiture of its charter to the state, "to settle the affairs of the corporation," it cannot be presumed that such powers are granted as will result in a benefit to the

---

4. See 2 Cal. Jur. 984; 2 R. C. L. 277.

5. Limitation of action to enforce stockholder's statutory liability, note, 3 Ann. Cas. 505. See, also, 6 Cal. Jur. 1011; 7 R. C. L. 411.

6. Accrual of right of action to put statute of limitation into operation as to stockholders' liability for corporate debts, notes, 10 L. R. A. (N. S.) 897; L. R. A. 1917E, 397. See, also, 6 Cal. Jur. 1014; 7 R. C. L. 412.

7. See 7 Cal. Jur. 177.

trustees personally and at the same time work to the disadvantage of the beneficiaries of the trust. ·

[9] ID.—FORFEITURE OF CHARTER—ABSENCE OF AUTHORITY TO FUNCTION AS DE FACTO CORPORATION.—Where the charter of a corporation has been forfeited to the state because of failure on the part of the corporation to pay its state license tax, such corporation, during the period of its suspended powers, has no authority to continue to function as a *de facto* corporation, so as to give validity to any contract which might be attempted to be entered into between the corporation and any other person.

[10] ID.—FORFEITURE OF CHARTER—STATUS OF CORPORATION.—During "forfeiture," or the time that the corporation is denied the right to exercise corporate functions, its existence is merely in a state of suspension. Immediately upon compliance by its representatives with the simple requirements of the statute, it fully regains its original "corporate status," with the same powers and functions which it possessed prior to the temporary loss of its corporate franchise.

[11] ID.—RESTORATION OF CORPORATE EXISTENCE—STATUS OF OFFICERS AND STOCKHOLDERS.—Upon restoration to corporate existence each of the officers who was in office and the respective stockholders who owned the stock of the corporation, prior to the forfeiture of the charter of the corporation, resumes each his original status with all the rights appertaining thereto, including, as to the stockholders, the right on dissolution of the corporation to a proportionate division of the assets thereof.

[12] ID.—FORFEITURE—POWERS OF CORPORATION.—During the time that "forfeiture" of the corporate franchise obtains, both the corporation and its stockholders are in a state of legal existence, with the corporate power to voluntarily act as a legal entity removed; but the sovereign power which may exercise the right of suspension of such corporate powers with reference to voluntary contractual ability on the part of the corporation may also retain in behalf of the corporation certain duties and burdens, including the involuntary, yet legal, assumption by the corporation of those liabilities which, by virtue of other regulatory provisions of the law, would ordinarily be cast upon the corporation.

[13] ID. — JUDGMENT AGAINST CORPORATION PRIOR TO FORFEITURE— SUBSEQUENT PAYMENT BY SURETY—RIGHT TO SUE ON STOCKHOLDERS' LIABILITY.—Where a just debt in the form of a judgment

9.   See 7 Cal. Jur. 137, 151.

10.   See 7 Cal. Jur. 149.

11.   See 11 Cal. Jur. 154.

12.   See 7 Cal. Jur. 150.

13.   See 7 R. C. L. 736.

subsisted against a corporation prior to the forfeiture of its charter for nonpayment of its state license tax, the fact that such forfeiture occurred prior to the time that a surety on an undertaking on an appeal by the corporation from said judgment paid the judgment, which had been affirmed, did not deprive said surety of the right to proceed against the stockholders on their statutory liability.

(1) 14a **C. J.**, p. 1174, sec. 3842 (Anno.). (2) 14a **C. J.**, p. 1174, sec. 3842 (Anno.). (3) 34 **C. J.**, p. 569, sec. 871, p. 570, sec. 872. (4) 4 **C. J.**, p. 1156, sec. 3166 (Anno.). (5) 14 **C. J.**, p. 1101, sec. 1724. (6) 37 **C. J.**, p. 839, sec. 191. (7) 14a **C. J.**, p. 1173, sec. 3840 (Anno.). (8) 14a **C. J.**, p. 1172, sec. 3840 (Anno.). (9) 14a **C. J.**, p. 1103, sec. 3698, p. 1158, sec. 3815 (Anno.). (10) 14a **C. J.**, p. 1125, sec. 3743 (Anno.), p. 1150, sec. 3803. (11) 14a **C. J.**, p. 1125, sec. 3743 (Anno.), p. 1196, sec. 3887. (12) 14a **C. J.**, p. 1150, sec. 3803. (13) 14 **C. J.**, p. 1039, sec. 1618.

APPEAL from a judgment of the Superior Court of Los Angeles County. Russ Avery, Judge. Modified and affirmed.

The facts are stated in the opinion of the court.

Dockweiler & Dockweiler & Finch for Appellant.

Wm. Hazlett, Ray Howard and Chas. M. Easton for Respondent.

HOUSER, J.—This is an appeal by the defendant B. A. Finch, as trustee of the United Trade School Contracting Company (hereinafter referred to as the corporation), from a judgment rendered against him as such trustee for the sum of $8,224.94; and it is also an appeal by defendant B. A. Finch, individually, from a judgment rendered in the same action against him for the sum of $2,756.66.

On July 7, 1913, a judgment was rendered in the superior court of Los Angeles County against the corporation, from which judgment the corporation appealed to the supreme court. The undertaking on appeal to stay execution on the judgment was executed on September 5, 1913, by plaintiff in her individual capacity, and by Allen Finch—the latter of whom died before the determination of the appeal, and which appeal resulted in an affirmance of the judgment. Prior thereto the plaintiff here qualified as executrix of the

will of Allen Finch, deceased. After the judgment had been affirmed an action was brought against Mary L. Finch, as such executrix, on the said undertaking, and judgment was recovered therein against said Mary L. Finch, in such capacity; which judgment, in pursuance of an order of the court, was compromised and paid on July 12, 1918. On March 4, 1916, for failure to pay its corporation license tax, the corporation forfeited its charter to the state of Califor-'nia. The action here involved was brought by said executrix against B. A. Finch, as the remaining trustee of the defunct corporation, to recover a judgment for the amount paid on the undertaking, and against said B. A. Finch, individually, as a stockholder of the corporation for his proportion as such stockholder, of the amount so paid by the plaintiff on account of such undertaking.

[1] Appellant urges that because the complaint contains no specific allegation that nothing has been paid on account of the liability upon which the action was brought, no cause of action is stated in the complaint, and hence that the judgment should be reversed. The criticism by appellant probably arose from a typographical error in his copy of the complaint containing an allegation "that nothing has been paid on account of the liability of said corporation or *by* its trustees or stockholders," etc.; whereas, according to the clerk's transcript of the record herein, it appears that the allegation of the complaint was "that nothing has been paid on account of the liability of said corporation or *of* its trustees or stockholders, either in proportion to their respective holdings or otherwise." We think that, under the authorities cited by counsel, the allegation was sufficient.

[2] The next point presented by appellant as a reason for a reversal of the judgment depends upon the particular wording of the judgment itself, which, in part, provides that "this judgment of $8224.94 is payable only from the assets and property of the United Trade School Contracting Company, a defunct corporation, which forfeited its charter to the State of California on the 4th day of March, 1916, *in which it then had any interest, or from the proceeds of such property or assets.*" It is contended that the italicized portion of the judgment is erroneous and should be stricken therefrom for the reason that it is an attempt to make all

the property and assets, or the proceeds of said property and assets, which the corporation owned on March 4, 1916, when the forfeiture of its charter occurred, subject to the lien of the judgment herein which was rendered on May 1, 1922, and which was more than six years after the charter of the corporation was forfeited.

From the record of the proceedings which took place among the respective counsel and the court, it appears that, at the request of counsel for defendant, the judgment was made payable only from the assets and property, if any, of the corporation defendant. But nowhere does it appear that defendant was responsible for that part of the judgment which directs that it be paid from such property as on March 4, 1916, the corporation "then had any interest, or from the proceeds of such property or assets." There was nothing in the nature of the action by which the court was authorized to direct that the judgment be paid out of a specified fund, or that the lien thereof attach to particular property. [3] A judgment ordinarily attaches to the real property generally of the judgment debtor, and the kind or the extent of the lien created by the judgment cannot be prescribed or regulated by the court pronouncing the judgment. (23 Cyc. 1350, and cases cited; Freeman on Judgments, sec. 342.) [4] The judgment, however, in that regard may be corrected under an order of modification, rather than by an order of reversal of the entire judgment.

It is further contended by appellant that the cause of action as against B. A. Finch individually was barred by the provisions of section 359, and by subdivision 1 of section 338 of the Code of Civil Procedure.

The undertaking was signed on September 5, 1913, and the judgment for the payment of which the undertaking was given was paid on July 12, 1918, by plaintiff herein as executrix of the will of Allen Finch, deceased. [5] It is settled by a long line of authorities in this state, and particularly by the case of *Hunt* v. *Ward*, 99 Cal. 612 [37 Am. St. Rep. 87, 34 Pac. 335], that an action to enforce a stockholder's liability on a corporate indebtedness must be commenced within three years after the liability is created. The principal question involved in the instant case is the date at which the defendant B. A. Finch, as a stockholder of the

corporation, became liable on account of the undertaking
which was signed on the fifth day of September, 1913, and
paid on the twelfth day of July, 1918. If the liability was
created at the date when the undertaking was signed, de-
fendant B. A. Finch as a stockholder is not liable; but if
the liability was incurred as of the date of the payment of
the amount of the judgment, it is conceded that the statute
has no application. The attention of this court has not been
directed to any case which deals with a situation like the
one presented by the facts herein. There are several Cali-
fornia cases in which the question of the liability of stock-
holders is treated, but in none of them is there found a
statement of the law which refers to such liability where an
undertaking on appeal has been the basis on which the de-
termination of the question depended. In the case of *Coul-
ter Dry Goods Co.* v. *Wentworth,* 171 Cal. 500 [153 Pac.
939], certain merchandise was contracted to be purchased
by the corporation at a certain time and which merchandise
was not delivered to the corporation until several months
after it had been purchased. On the failure of the corpora-
tion to pay the purchase price, an action was brought to
enforce the stockholders' liability as to certain stockholders
who became such after the merchandise was purchased, but
before it was delivered. It was held that such stockholders
were not liable. In the course of the opinion, having to do
particularly with the question of date when a stockholder's
liability attaches, the court said: " . . . it is apparent that
under the provisions of the constitution and section a 'lia-
bility' is created when a contract binding on it is made by
a corporation and independent of any question as to whether
that 'liability' is absolute or contingent or as to when the
right to enforce it may accrue; and therefore that those who
are stockholders when the 'liability' is created or incurred
are alone liable in any actions arising from its breach." To
the same effect, see *Hunt* v. *Ward,* 99 Cal. 612 [37 Am. St.
Rep. 87, 34 Pac. 335].

[6] While such language is very strong, the force thereof
is somewhat lessened because in neither of the cases to which
reference has been made were the facts strikingly analogous
to those here presented. No question of suretyship was
therein involved. In each of those cases the obligation of

the corporation to pay a fixed or determinable amount was agreed upon at the outset. Here, whether or not the surety would ever be called upon to pay on account of the undertaking, depended, first, upon the outcome of the appeal from the judgment; and, secondly, assuming that the judgment against the corporation should be affirmed by the supreme court and the judgment against the corporation should become final, upon the question of whether on not the corporation itself would pay the judgment. The effect of the undertaking was that, in the event a liability on account of the judgment were eventually established against the corporation, the surety promised to pay the same. The surety did not agree to pay the judgment as of the date when the undertaking was signed, but agreed to be bound only upon the happening of a certain event. He incurred no liability on account of the undertaking unless the judgment were affirmed. No cause of action arose in favor of the judgment creditor and against such surety until after the judgment was affirmed, and since the surety incurred no present liability on account of the undertaking, no present cause of action existed in his favor on account of such undertaking, either as against the corporation or as against any of its stockholders. He had parted with nothing of value, and his right to maintain an action against either the corporation or its stockholders became fixed only after he had paid the amount which he had agreed to pay on the affirmance of the judgment. Up to the time the payment be actually made by the surety, his position is that of a mere promisor. He promises that he will pay; but a promise on his part cannot be accepted as a consummated fact. If by reason of his insolvency or other inability to pay the amount of the judgment, he fail to pay the same, no liability to him is ever incurred. In the leading case of *Yule* v. *Bishop,* 133 Cal. 574 [62 Pac. 68, 65 Pac. 1094], and in which the facts nearest approach the facts here presented, it is held that one who signed a corporation promissory note as an accommodation indorser thereon, and who, on the default of payment thereof by the corporation, was compelled to pay the same, was entitled to recover from those persons who were stockholders, not when the note was signed, but from those who were stockholders when the note was paid—in other words, that no debt or liability was incurred

by the corporation to the surety, or accommodation indorser of the note, until after he had actually paid the same.

From analogy it may therefore be announced as a rule of law that on an undertaking of the character here involved, as between the surety and the stockholders of the corporation, the statute of limitations does not commence to run until the surety has met the obligation imposed upon him by the undertaking.

[7] At the time the charter of the corporation was forfeited defendant B. A. Finch was the only director thereof; and under the terms of the statute then governing the forfeiture of charters of corporations because of failure to pay state license taxes (Stats. 1915, p. 422), he became a trustee of the corporation and the stockholders thereof, with power to settle the affairs of the corporation. After the judgment against the corporation had become final and before plaintiff herein had paid on account of the undertaking the amount of the judgment theretofore rendered against the corporation, defendant B. A. Finch, as an individual stockholder, surrendered his stock in the corporation to himself, acting as trustee of the corporation, for the purpose of having such stock canceled. Acting thereon, B. A. Finch, as trustee for the corporation and its stockholders, accepted the said stock from himself individually and went through the form of its cancellation. The findings of the court show that at the time the said stock was thus attempted to be canceled certain other stock in the corporation was owned by certain other stockholders. B. A. Finch was a trustee not only for the corporation as a legal entity, but was also a trustee for all the stockholders. The effect of a valid cancellation of the stock of any one stockholder would necessarily increase the liability of the remaining stockholders for any debts of the corporation. To permit B. A. Finch as a trustee for all the stockholders to cancel his own stock and thereby to relieve himself from liability for debts of the corporation, would be to recognize the right of a trustee to benefit himself by virtue of such a transaction, to the injury of others to whom he stood in a fiduciary relationship. [8] Notwithstanding the broad powers possessed by trustees of a defunct corporation, rendered such because of the forfeiture of its charter to the state, ''to settle the affairs of

the corporation," it cannot be presumed that such powers are granted as will result in a benefit to the trustees personally and at the same time work to the disadvantage of the beneficiaries of the trust. It follows that the attempted cancellation of the stock of B. A. Finch was in the nature of a fraud and as such was a nullity.

It is finally contended by appellant that because the corporation had failed to pay its state license tax, and as a result thereof that its charter had been forfeited to the state prior to the time that the surety on the undertaking paid the judgment which had been affirmed by the supreme court against the corporation, the corporation ceased to exist, and consequently that there were no stockholders thereof against whom any statutory liability could attach. Section 322 of the Civil Code provides in effect that those persons only are liable as stockholders of a corporation who were stockholders at the time the debt or liability of the corporation was incurred. **[9]** The case of *Van Landingham* v. *United Tuna Packers*, 189 Cal. 353 [208 Pac. 973], is authority for the rule that where the charter of a corporation has been forfeited to the state because of failure on the part of the corporation to pay its state license tax, such corporation, during the period of its suspended powers, has no authority to continue to function as a *de facto* corporation, so as to give validity to any contract which might be attempted to be entered into between the corporation and any other person; and there are other California cases which in effect announce a similar principle. Those cases, however, all deal either with a new obligation on the part of the corporation, contracted by it during the period of the suspension of its corporate existence, or with questions related to matters of procedure. Nowhere in any of such cases is there discussed the legal effect of an original obligation existing against the corporation before the forfeiture of its charter, which obligation has been assumed and discharged by a co-obligor under and by virtue of legal procedure, with the resultant right in such obligor to relief as against the corporation after its corporate franchise had been forfeited, and during a time when such corporate franchise was in a state of suspension, dependent upon action by such corporation in the way of redeeming its charter by means of payment of the delinquent

license tax. The statute which provides for the forfeiture of the charter of a corporation also provides the procedure by which such a corporation may be restored to its original powers. · [10] During "forfeiture," or the time that the corporation is denied the right to exercise corporate functions, its existence is merely in a state of suspension. Immediately upon compliance by its representatives with the simple requirements of the statute, it fully regains its original "corporate status," with the same powers and functions which it possessed prior to the temporary loss of its corporate franchise. The statute contains no express declaration, nor do we perceive any indication of legislative intent, to the effect that any change in the personnel of either the officers or the stockholders arises by virtue of the fact that for a time the corporate powers of the corporation are suspended. [11] Upon restoration to corporate existence each of the officers who was in office and the respective stockholders who owned the stock of the corporation, prior to the forfeiture of the charter of the corporation, resumes each his original status with all the rights appertaining thereto, including, as to the stockholders, the right on dissolution of the corporation to a proportionate division of the assets thereof. [12] It follows that during the time that "forfeiture" of the corporate franchise obtains, both the corporation and its stockholders are in a state of legal existence, with the corporate power to voluntarily act as a legal entity removed; but the sovereign power which may exercise the right of suspension of such corporate powers with reference to voluntary contractual ability on the part of the corporation, may also · retain in behalf of the corporation certain duties and burdens, including the involuntary, yet legal, assumption by the corporation of those liabilities which, by virtue of other regulatory provisions of the law, would ordinarily be cast upon the corporation. [13] In the instant case, a just debt in the form of a judgment subsisted against the corporation prior to the loss by it of its corporate charter. That debt was paid by the plaintiff herein for the benefit of the corporation and its stockholders, and thereupon an implied obligation, not of the choosing of the corporation, but cast upon it by operation of law, came into existence on the part of the corporation and its stockholders to reimburse the plaintiff. The purpose of the

legislature in decreeing a penalty of temporary loss of corporate powers for the failure of the corporation to pay its state license tax could not reasonably be held to include such an advantage as that of freeing either the corporation or its stockholders from the payment of such just debts as had accrued against the corporation prior to the forfeiture of its charter. Such a construction of the statute, with such a disastrous result, could not have been within the contemplation of either the legislature as a whole or of any honest legislator. It follows that the judgment herein should be affirmed, other than that said judgment should be modified by striking therefrom the provision hereinbefore italicized and being the words "in which it then had any interest, or from the proceeds of such property or assets." It is so ordered; respondent to recover costs on appeal.

Conrey, P. J., and Curtis, J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on July 24, 1924.