[No. A042069. First Dist., Div. Four. Oct. 5, 1989.]

FREDERICK DAMATO, Plaintiff and Appellant, v.
RICHARD SLEVIN et al., Defendants and Respondents.

**COUNSEL**

Gregory J. Antone for Plaintiff and Appellant.

David F. Beach for Defendants and Respondents.

**OPINION**

POCHÉ, J.—This is an appeal from a summary judgment by the assignee of a suspended corporation's contractual rights, who contests the trial court's conclusion that restoration of the corporation's powers did not override the opposing parties' statutory right to treat the contracts as voidable. Because we agree with the trial court's conclusion, we will affirm the judgment.

## Background

In mid-1983 defendant Slevin[1] agreed to purchase a cafe, and the sublease for the premises on which the cafe was located, from Correct, Inc., a California corporation whose president was plaintiff Frederick Damato. After taking possession of the premises and making several payments towards the purchase price, Slevin abandoned the property. In September of 1985 Damato, as Correct's assignee,[2] commenced this action by filing a complaint for damages alleged to have been caused by the breach of these agreements.

In May of 1987 Slevin moved for summary judgment. The grounds of the motion were that Correct's corporate powers had been suspended in 1981 for nonpayment of taxes; that the purported assignment from Correct to Damato was ineffective; and that the sale and sublease agreements between Correct and Slevin were therefore voidable by Slevin. Slevin supported the motion with a letter from the Franchise Tax Board.[3] Armed with documentation from the Secretary of State showing that Correct's corporate powers had just been revived, Damato urged denial of the motion because (1) the 1981 suspension had not been certified by the Secretary of State, and was thus ineffective, and (2) in any event the restored validity of Correct's corporate status provided an adequate basis for maintaining the action against Slevin.[4]

The trial court conducted a hearing on the motion, and granted it. The judgment entered in due course is the subject of this timely appeal by Damato.

---

[1] Because there seems no point in differentiating between Slevin Enterprises, Inc., and its president, Richard Slevin, each of which was named as defendants, we will merge both identities and refer to them simply as "Slevin."

[2] The record does not establish either the precise nature of the assignment or when it was made.

[3] The body of the letter reads as follows: "I, Sandra Hughes, hereby declare I am employed as Manager of the Data Storage and Retrieval Services Unit by the State of California, Franchise Tax Board, and am an authorized official custodian of the records for the Franchise Tax Board, State of California. [¶] I make this certification in my capacity and not otherwise. My duties include: managing and directing the activities of the Data Storage staff relative to providing service to other units of the Franchise Tax Board in searching for, refiling, and maintaining the records and tax returns received by the Franchise Tax Board. [¶] This is to certify that our records indicate Correct Inc. was suspended on June 1, 1981. [¶] I declare under penalty of perjury that the foregoing is true and correct. Executed at Sacramento, California on 2lst day of January 1987."

[4] Due to delays occasioned by a change of attorneys, Damato's opposition was not filed until the latter part of August 1987. The documentation from the Secretary of State was in the form of a certificate advising that Correct "was suspended on June 1, 1981 pursuant to the provisions of the California Bank and Corporation Tax Law, and was revived on August 11, 1987 as reported by the Franchise Tax Board."

REVIEW

Damato contends that the trial court erred in granting Slevin's motion for summary judgment. This contention has three components. The first is that Slevin failed to present evidence that the purported suspension of Correct complied with statutory provisions. The second is that even if a valid suspension did occur, the reinstatement of Correct's corporate powers nullified all consequences of the suspension. Finally, Damato argues for the existence of an equitable estoppel by reason of Slevin's dilatoriness in raising the suspension issue.

■ A domestic corporation's "powers, rights and privileges" may be suspended if it fails to pay "any tax, penalty, or interest" to the Franchise Tax Board (Rev. & Tax. Code, § 23301),[5] or if it fails to file a return with that body (§ 23301.5). Suspension is not automatic, and does not take effect until the name of the corporation is transmitted by the Franchise Tax Board to the Secretary of State. (§ 23302; *Mediterranean Exports, Inc.* v. *Superior Court* (1981) 119 Cal.App.3d 605, 615 [174 Cal.Rptr. 169].) No authority supports Damato's argument that such a transmission from the Franchise Tax Board must be "formally turned into a certificate by the Secretary of State suspending the corporation." The Legislature knew how to provide for certification (cf. § 23305, quoted *post*; Corp. Code, § 2105, subd. (a) [foreign corporation required to obtain "certificate of qualification" from the Secretary of State prior to transacting intrastate business]), but did not do so. The use of the word "suspended" by the Secretary of State (see fn. 4, *ante*) supports an inference that the transmission of Correct's name was in fact made as required by section 23302. The same inference from the Franchise Tax Board's letter (quoted in fn. 3, *ante*, p. 670) may have less potency, but the two letters serve as the evidentiary anchor for the conclusion that both the sender and the recipient viewed the transmission as having been completed. Indulgence of these inferences and conclusion was within the trial court's power (see Code Civ. Proc., § 437c, subd. (c)), and suffices to defeat the first component of Damato's contention.

Section 23305 provides in pertinent part: "Any taxpayer which has suffered the suspension . . . provided for in Section 23301 or Section 23301.5 may be relieved therefrom upon making application therefor in writing to the Franchise Tax Board and upon payment of the tax and the interest and penalties for nonpayment of which the suspension . . . occurred, together with all other taxes, deficiencies, interest and penalties due under this part, and upon the issuance by the Franchise Tax Board of a certificate of revivor. . . ." ■ Our task is to determine the effect of

---

[5] Statutory references are to the Revenue and Taxation Code unless otherwise indicated.

Correct's corporate revival[6] with Slevin's invocation of section 23304, which provides: "Every contract made in violation of this article is hereby declared to be voidable, at the instance of any party other than the taxpayer."[7]

California originally adopted a harsh attitude toward delinquent corporate taxpayers: "the penalty imposed upon a corporation for a failure to pay its license and franchise taxes was a forfeiture of its charter [citations], which resulted in a dissolution of the corporation." (*Ransome-Crummey Co.* v. *Superior Court* (1922) 188 Cal. 393, 396 [205 P. 446].) With time, the Legislature's hostility gradually relaxed.[8] Following this lead, courts no longer treated suspended corporations as pariahs. ■ What has come down to the present day is the general rule that "the corporation may not prosecute or defend an action, nor appeal from an adverse judgment in an action while its corporate rights are suspended for failure to pay taxes." (*Reed* v. *Norman* (1957) 48 Cal.2d 338, 343 [309 P.2d 809].) Nevertheless, courts have given the curative effect of revivor an expansive construction. Indeed, the present judicial attitude is positively benign. "In a number of situations the revival of corporate powers by the payment of delinquent taxes has been held to validate otherwise invalid prior action. . . . [A]s to matters occurring prior to judgment the revival of corporate powers has the effect of validating the earlier acts and permitting the corporation to proceed with the action." (*Peacock Hill Assn.* v. *Peacock Lagoon Constr. Co.* (1972) 8 Cal.3d 369, 371, 373 [105 Cal.Rptr. 29, 503 P.2d 285]; see *Electronic Equipment Express, Inc.* v. *Donald H. Seiler & Co.* (1981) 122 Cal.App.3d 834, 845-846 [176 Cal.Rptr. 239].) Revivor may even be

---

[6] It may be noted in passing that no "certificate of revivor" issued by the Franchise Tax Board to Correct pursuant to section 23305 appears in the record. The existence of such a certificate may, however, be accepted in light of the letter of the Secretary of State quoted in note 4, *ante.*

[7] Section 23301, 23301.5, 23304, and 23305 appear in article 7 (Suspension and Revivor, commencing with § 23301) of part 11 (Bank and Corporation Tax Law, commencing with § 23001) of the Revenue and Taxation Code.

[8] Two examples will illustrate: "[Former s]ection 32 of the California Bank and Corporation Franchise Tax Act . . . provide[d] that for failure to pay the taxes levied thereunder, '*the corporate powers, rights and privileges* of the delinquent taxpayer, if it be a domestice [*sic*] corporation, shall be *suspended* and shall be incapable of being exercised *for any purpose or in any manner except* for the purpose of amending the articles of incorporation to set forth a new name, and the officers, directors and stockholders or members of any such corporation may take such action in their respective capacities as may be required by law in order to amend the articles of incorporation for such purpose . . . .' " (*Boyle* v. *Lakeview Creamery Co.* (1937) 9 Cal.2d 16, 18-19 [68 P.2d 968] [original italics].)

"[Former s]ection 3669c, subdivision 2, of the Political Code, read[ ]: '. . . *the corporate rights, privileges and powers* of every domestic corporation which has failed to pay said [franchise or other] tax and money penalty *shall . . . be* suspended, and *incapable of being exercised for any purpose or in any manner, except to defend any action* brought in any court against such corporation, until said tax with all accrued penalties . . . are paid . . . .' " (*Ransome-Crummey Co.* v. *Superior Court, supra,* 188 Cal. 393 at p. 396 [italics added].)

demonstrated during the pendency of an appeal. (See *Rooney* v. *Vermont Investment Corp.* (1973) 10 Cal.3d 351, 359 [110 Cal.Rptr. 353, 515 P.2d 297]; *Reed* v. *Norman, supra,* at p. 344; *Glendale Fed. Sav. & Loan Assn.* v. *Marina View Heights Dev. Co.* (1977) 66 Cal.App.3d 101, 156, fn. 16 [135 Cal.Rptr. 802]; cf. *Gar-Lo, Inc.* v. *Prudential Sav. & Loan Assn.* (1974) 41 Cal.App.3d 242, 243-244 [116 Cal.Rptr. 389].) Revivor and validation are akin to the "relation back" of amended pleadings. (See *A. E. Cook Co.* v. *K S Racing Enterprises, Inc.* (1969) 274 Cal.App.2d 499, 501 [79 Cal.Rptr. 123].) This benevolence is justified on the theory that the purpose of section 23301 "is to put pressure on the delinquent corporation to pay its taxes, and that purpose is satisfied by a rule which views a corporation's tax delinquencies, after correction, as mere irregularities. . . . There is little purpose in imposing additional penalties after the taxes have been paid." (*Peacock Hill Assn.* v. *Peacock Lagoon Constr. Co., supra,* 8 Cal.3d at p. 371; accord *La France Enterprises* v. *Van Der Linden* (1977) 70 Cal.App.3d 375, 380 [138 Cal.Rptr. 690].)

■ Not surprisingly, Damato draws our attention to this final sentence. He sees as dispositive the statement by our Supreme Court that "a plea of lack of capacity of a corporation to maintain an action by reason of a suspension of corporate powers for nonpayment of taxes 'is a plea in abatement which is not favored in law, is to be strictly construed and must be supported by facts warranting the abatement' at the time of the plea." (*Traub Co.* v. *Coffee Break Service, Inc.* (1967) 66 Cal.2d 368, 370 [57 Cal.Rptr. 846, 425 P.2d 790] [citing and quoting *Maryland C. Co.* v. *Superior Court* (1928) 91 Cal.App. 356, 361 (267 P. 169)].) As Damato sees it, he demonstrated revivor of Correct's full legal capacity prior to the granting of Slevin's motion for summary judgment, thus establishing his right to carry on with his action. There is nothing wrong with this syllogism if our focus were to be limited to the concerns of the judicial and taxing authorities. What Damato fails to appreciate are the independent and superseding rights of Slevin protected by section 23304.

So far as we can determine, the situation before us is the first of its kind in this state. Reduced to its essence, Damato's claim is that the contracts executed by his corporate assignor when its powers were suspended have been validated by the revivor of Correct's full legal capacity and powers. The former harsh approach to suspended corporations viewed them as "dead" and "defunct." (*Van Landingham* v. *United Tuna Packers* (1922) 189 Cal. 353, 370 [208 P. 973].) The modern use of revivor has upgraded their status from a corpse to "an unconscious person revived by artificial respiration." (*Diverco Constructors, Inc.* v. *Wilstein* (1970) 4 Cal.App.3d 6, 12 [85 Cal.Rptr 851].) The Legislature's increased tolerance toward suspended corporations has been matched by a corresponding solicitude for

those who deal with such reanimated entities. Section 23304 is an explicit recognition that third party rights must be protected. Lest there be any doubt, at the same time it enacted section 23304 the Legislature provided that a corporation's revivor "shall be without prejudice to any action, defense or right which has accrued by reason of the original suspension . . ." (§ 23305a; see Stats. 1949, ch. 557, § 1, pp. 971-972), a passage that can only refer to third parties such as Slevin.

Thirty years ago a court predicted that this language "would appear to have application, for instance, to a situation where a contract made by the corporation is voidable because entered into while the corporation's powers, rights and privileges were suspended (Rev. & Tax. Code, § 23304), and the fact of reinstatement does not deprive the other party of the *right* to avoid the contract." (*Schwartz* v. *Magyar House, Inc.* (1959) 168 Cal.App.2d 182, 190 [335 P.2d 487] [italics added]; accord *White Dragon Productions, Inc.* v. *Performance Guarantees, Inc.* (1987) 196 Cal.App.3d 163, 170 [241 Cal.Rptr. 745].) We vindicate that prediction here.

The contracts which formed the basis for Damato's action are declared by section 23304 to be voidable at Slevin's discretion. Slevin exercised that right when he moved for summary judgment. (See *White Dragon Productions, Inc.* v. *Performance Guarantees, Inc., supra,* 196 Cal.App.3d 163 at p. 172; *Depner* v. *Joseph Zukin Blouses* (1936) 13 Cal.App.2d 124, 127 [56 P.2d 574].) Revival of Correct's corporate potency would validate most of its legal rights and remedies (see *Diverco Constructors, Inc.* v. *Wilstein, supra,* 4 Cal.App.3d 6 at p. 12; *A. E. Cook Co.* v. *K S Racing Enterprises, Inc., supra,* 274 Cal.App.2d 499 at pp. 500-501), as well as "procedural" measures taken on its behalf during the course of litigation (see *Rooney* v. *Vermont Investment Corp., supra,* 10 Cal.3d 351 at p. 359; *Welco Construction, Inc.* v. *Modulux, Inc.* (1975) 47 Cal.App.3d 69, 73 [120 Cal.Rptr. 572]), but the contractual infirmity of Damato's corporate assignor at the time of the contract's execution was an abiding defect of his complaint always subject to Slevin's attack. (See *Sale* v. *Railroad Commission* (1940) 15 Cal.2d 612, 617 [104 P.2d 38]; *Usher* v. *Henkel* (1928) 205 Cal. 413, 416-418 [271 P. 494]; *Van Landingham* v. *United Tuna Packers, supra,* 189 Cal. 353 at pp. 363-364, 370; *Myrick* v. *O'Neill* (1939) 33 Cal.App.2d 644, 646-648 [92 P.2d 651]; *Silvey* v. *Fink* (1929) 99 Cal.App. 528, 532 [279 P. 202]; cf. *Vogue Creamery Co.* v. *Acme I. C. Co.* (1935) 8 Cal.App.2d 357, 359 [47 P.2d 757] ["When a vendor under an executory contract has rendered himself unable to perform he cannot complain of the vendee's repudiation"]; accord *Erb* v. *Flower* (1967) 248 Cal.App.2d 499, 500-501 [56 Cal.Rptr. 612]; *Finch* v. *Finch* (1924) 68 Cal.App. 72, 81 [228 P. 553].) Just as revivor will not deprive a party of "substantive defenses that have accrued during the corporate suspension" (*Welco Construction, Inc.* v.

*Modulux, Inc., supra,* 47 Cal.App.3d 69), it is likewise ineffective to divest the party of the statutory rights granted by sections 23304 and 23305a. (See *Schwartz* v. *Magyar House, Inc., supra,* 168 Cal.App.2d 182 at p. 190.) "A contract is executed at one instant—at the very instant that the meeting of minds occurs. If void or nonexistent at that time there is good reason for saying that said purported contract cannot be revived. Nothing exists to revive." *(Maryland C. Co.* v. *Superior Court, supra,* 91 Cal.App. 356 at pp. 362-363.) All that has to be done is change the word "void" to "voidable" to demonstrate why this principle and sections 23304 and 23305a suffice to require rejection of the second component of Damato's contention.

There remains only Damato's claim that equitable estoppel existed as a triable issue which precluded granting Slevin's motion. ■ "Generally speaking, four elements must be present in order to apply the doctrine of equitable estoppel: (1) the party to be estopped must be apprised of the facts; (2) he must intend that his conduct shall be acted upon, or must so act that the party asserting the estoppel had a right to believe it was so intended; (3) the other party must be ignorant of the true state of facts; and (4) he must rely upon the conduct to his injury." *(Driscoll* v. *City of Los Angeles* (1967) 67 Cal.2d 297, 305 [61 Cal.Rptr. 661, 431 P.2d 245]; accord *State of California* v. *Superior Court (Fogerty)* (1981) 29 Cal.3d 240, 244 [172 Cal.Rptr. 713, 625 P.2d 256] (text & fn. 2).) Damato can prevail on this point only if he shows that Slevin knew of Correct's suspension while Damato (who was Correct's president) did not. Damato's declaration— which is the only relevant evidence on this point—provides absolutely no basis for concluding that Slevin was aware of Correct's corporate disability. The claimed equitable estoppel was therefore no impediment to the success of Slevin's motion.

The summary judgment is affirmed.

Anderson, P. J., and Perley, J., concurred.