**Jack KIRBY d/b/a USSA Corp., Plaintiff,**

v.

**COASTAL SALES ASSOCIATES, INC. d/b/a Coordinated Strategic Alliances, Inc. and CSA, Inc., International Strategic Alliances, Inc., and Retail Strategic Alliances, Inc., Defendants.**

**No. 98 Civ. 8304(CM).**

United States District Court, S.D. New York.

Feb. 6, 2001.

Robert A. Vort, Tenafly, NJ.

Jonathan R. Nelson, New York City.

MEMORANDUM DECISION AND OR-
DER GRANTING USSA'S MOTION
TO INTERVENE, DENYING DE-
FENDANT'S MOTION FOR SUM-
MARY JUDGMENT, AND DENYING
PLAINTIFF'S MOTION FOR RE-
CONSIDERATION

McMAHON, District Judge.

Plaintiff Jack Kirby, doing business as
USSA Corporation (USSA), brings this ac-

tion against defendants Coastal Sales Association ("Coastal"), International Strategic Alliances, Inc., and Retail Strategic Alliances, Inc. Kirby asserts the following claims: (1) breach of a 1996 written contract between Coastal and USSA; (2) breach of a 1995 oral contract between Coastal and USSA; (3) declaratory judgment that the 1996 contract has not been terminated and remains in effect; and (4) declaratory judgment that the 1995 contract has not been terminated and remains in effect.

Both Kirby and defendants previously cross-moved for summary judgment. On January 31, 2000, I granted defendants' motion dismissing plaintiff's first and third claims, denied defendants' motion for summary judgment dismissing plaintiff's second and fourth claims, granted plaintiff's motion for summary judgment dismissing defendants' first, second, and third counterclaims and claim for punitive damages, and dismissing defendants' third, fourth, fifth, sixth, seventh and tenth affirmative defenses. *Kirby v. Coastal Sales Association, Inc.,* 82 F.Supp.2d 193 (S.D.N.Y.2000).

The following motions are now before me: (1) plaintiff's motion for reconsideration of the January 31, 2000 opinion and order; (2) defendants' motion for summary judgment on plaintiff's second and fourth claims; and (3) a motion by USSA to intervene.

## FACTUAL AND PROCEDURAL BACKGROUND

*1995 and 1996 contracts*

This contract dispute arises out of the marketing of a compact folding chair known as the "What–A–Chair" by Kirby and his business associate, Lar Park–Lincoln. The complicated facts of this case are laid out in detail in the January 31, 2000 opinion. While familiarity with that opinion is assumed, I will briefly describe the pertinent facts and portions of my ruling that are now the subject of yet another round of motions by the parties.

In September 1994, Kirby and Park–Lincoln approached defendant Coastal about the prospect of marketing the What–A–Chair on QVC, a home-shopping television network.

Coastal would obtain a National Football League ("NFL") marketing license, put football team logos on the chairs, market the chair on QVC, and pay Kirby and Park–Lincoln a fixed royalty from Coastal. In early 1995, Coastal made an oral offer to pay Kirby and Park–Lincoln $1.40 per chair sold, a price intended to represent 10 percent of Coastal's wholesale price to QVC of approximately $14. On April 24, 1995, Kirby received a fax from Ed Tesher, Coastal's Vice President, informing Kirby that Coastal needed confirmation from the manufacturer, Kolon California, that the agreed-upon price for chairs was "$10.50 net, net, landed, per chair." He went on to note that "We also need to confirm the agreement between Lar and yourself as to build in for pricing."

The terms of the oral agreement were memorialized in a letter from Park–Lincoln to Tesher dated May 19, 1995, which states that the royalty commissions were "payable to Jack [Kirby] and I," but goes on to state that the total commission was to be "divided equally between the following two corporations," which Park–Lincoln identified as USSA and Army Brat, a corporation of which Pak–Lincoln was president. Defendants do not dispute that an oral agreement had been reached by that point; however, neither Tesher nor any other officer of Coastal signed the May 19 letter.

On May 19, 1996, Kirby, as President of USSA, and Levine, as President of Coastal, signed a new royalty agreement (the " 1996 agreement"), which provided that "First Party [named in the contract as Coastal] markets a product sold under the trade name What A Chair, What An Ottoman, and The Double Chair, as well as any new chairs (First Party's Product)." Kirby argues that the "any new chairs" language in this provision obligates Coastal to pay him a royalty on sales of all seating products developed by Coastal from the original What–A–Chair design. The contract sets out royalty amounts for each of the products, and provides that the initial term of the agreement as amended would run from March 1, 1996 to December 31, 1996, and was renewable thereafter upon 60 days notice prior to the end of the "Initial Term" or any "renewal term." The agree-

ment states that it shall be construed under New York law.

On November 11, 1998, defendants gave Kirby written notice that the contract would terminate on January 1, 1999. Kirby denies this notice was effective on the basis that defendants failed to provide the 60 days notice as called for under the contract. He claims defendants breached the agreement in numerous ways, and alleges damages in the amount of $275,000.

## January 31, 2000 decision

In granting defendants' motion for summary judgment on plaintiff's first claim—breach of the 1996 contract—I found that the 1996 contract was voidable under California Revenue and Tax Code § 23304.1(a), because USSA, whose corporate charter had been suspended in California since 1988, lacked capacity to contract in 1996. I rejected plaintiff's argument that it was in fact Kirby, in his individual capacity, who entered into the contract, rather than USSA (with Kirby signing as president). As Coastal had clearly indicated its desire to avoid the contract, both by terminating it and by asserting the defense of lack of capacity in the lawsuit, plaintiff's first claim was dismissed. As a result, the third claim, which sought a declaratory judgment that the 1996 contract remains in full force and effect, was also dismissed.

I also denied plaintiff's last-minute request to abate the action so that Kirby could return USSA to good corporate standing under California law:

> Kirby elected to take his chances by commencing an action on a voidable contract when his corporation lacked legal status. He has burdened this court and the Defendants by maintaining this action for nearly a year and a half, subjecting both the Court and Coastal to massive discovery (with concomitant discovery disputes) and extensive motion practice. Now is not the time to put his corporate affairs in order. He should have done so prior to commencing this action—especially since he can

hardly claim to be ignorant of his peril (...).

*Kirby*, 82 F.Supp.2d at 198.

With respect to the Second Claim—breach of the 1995 contract—I found there was also an issue of corporate capacity, since any contract made by a suspended corporation, whether it be written or oral, is voidable. However, because of an ambiguous record, there was a disputed issue of fact concerning whether the 1995 contract was made by Kirby or by USSA. "If the latter, then the 1995 agreement is as voidable as the 1996 written one; if with Kirby, then the agreement exists and is enforceable." *Id.* As the viability of the Fourth Claim depends on whether Kirby can maintain his second claim, I allowed this claim to proceed to trial as well. As I pointed out, however:

> Even if Kirby is able to prove that he, and not his corporation, was the contra-party to the 1995 contract, he may not be able to extend the reach of that agreement to the time period following his new deal made in 1996 and now voided. Unfortunately, the parties have not begun to brief this complicated issue; it certainly cannot be resolved on the record presently before me.

*Id.* at 201–202.

## Current motions

Kirby moves for reconsideration of my order dismissing the first and third claims on two grounds: (1) the Court lacked personal jurisdiction over USSA Corp., and thus had no power to find that the 1996 sales agreement was void; (2) the Court misread California law in determining that USSA Corp. lacked capacity to enter into the 1996 agreement.

USSA moves to intervene in the present action under Fed.R.Civ.P. 24(a). As part of this motion, USSA submitted documentation showing that the State of California Franchise Tax Board issued a Certificate of Revivor, effective February 2, 2000, relieving USSA Corp. of its corporate suspension. At the same time, the State of California issued a Certificate of Relief from Contract Voidability, granting relief from contract voidability with respect to contracts entered into between October 1, 1994 and February 1,

2000. USSA argues that, as a result, it now has standing to proceed with its claims on the 1996 contract, and if it was the contra-party, to the 1995 contract.

Defendants move for summary judgment on the second and fourth claims, offering evidence that the majority of checks issued by Coastal following this agreement were to USSA Corp., and requesting that the Court find no disputed issue of fact remains as to who signed the contract.

## MOTION FOR RECONSIDERATION

Kirby is wrong about each of the arguments he makes in his motion to reconsider.

First, this court did have jurisdiction to decide the issue of USSA's standing. The issue was raised because Kirby brought this action as "Jack Kirby *d/b/a USSA Corp.*" (Emphasis added)

Second, the court's application of California law in this area was correct. In my earlier opinion, I recognized that under California statutory law, "Any contract made by the corporation while its charter is in suspension is voidable 'at the instance of any party to the contract other than the taxpayers.'" *Kirby,* 82 F.Supp.2d at 197 (citing Cal.Rev. § Tax Code § 23304.1(a) [1]); *see also Gardiner Solder Co. v. Superior Alloy Corp.,* Inc. 232 Cal.App.3d 1537, 1543, 284 Cal.Rptr. 206, 209 (1991); *Damato v. Slevin,* 214 Cal. App.3d 668, 674, 262 Cal.Rptr. 879, 883 (1989); *White Dragon Prod., Inc. v. Performance Guarantees, Inc.,* 196 Cal.App.3d 163, 170–72, 241 Cal.Rptr. 745, 749–50 (1987). I also relied on the holding in *Van Landingham v. United Tuna Packers,* 189 Cal. 353, 208 P. 973, 976 (1922), that "a corporation whose charter has been suspended for delinquent license tax payments lacks the capacity to enter into contracts."

Kirby challenges this court's reliance on *Van Landingham,* pointing out, somewhat less than insightfully, that the case is "old law." Old law it may be, but, to the extent it held that a corporation whose charter is sus-

pended for failure to pay taxes lacks capacity to contract, it remains good law. Kirby has cited no case or statutory law subsequent to *Van Landingham* to suggest that the rule precluding suspended corporations from contracting has been overruled. *See Grell v. Laci LeBeau Corp.,* 73 Cal.App.4th 1300, 1306, 87 Cal.Rptr.2d 358 (1999) (observing that under Cal. Revenue and Tax Code § 23301 (the same provision under which USSA Corp's charter was suspended), "the powers of a domestic corporation are 'suspended,' not dissolved, due to its failure to pay taxes," and thus, a suspended corporation remained subject to suit during the period of suspension); *Gardiner Solder Co. v. SupAlloy Corp., Inc.,* 232 Cal.App.3d 1537, 1542–43, 284 Cal.Rptr. 206 (deciding not whether contract was voidable but whether § 23304.5 precluded restitution of goods transferred pursuant to a "voidable" contract); *Belle Vista Investment Co. v. Hassen,* 227 Cal.App.2d 837, 39 Cal.Rptr. 184 (1964), *overruled in part by Traub Co. v. Coffee Break Service, Inc.,* 66 Cal.2d 368, 425 P.2d 790, 57 Cal.Rptr. 846 (1967) (considering only the legal effect of suspension on cross-defendant corporation's ability to *prosecute* action and to obtain a *judgment,* not the corporation's ability to form the contract in the first place).

In *Damato v. Slevin,* 214 Cal.App.3d 668, 673, 262 Cal.Rptr. 879 (1989), the suspended corporation had been revived, and was seeking retroactively to validate the contract at issue in the case. Thus, the court was faced with an issue of first impression: whether restoration of a corporation's powers upon its subsequent payment of delinquent taxes should override the statutory right of a party contracting with a corporation to treat sublease and sale agreements as voidable. Under California law at the time, revivor did not "lift" the voidability of contracts made during suspension. As I explain below, that holding has been overruled by statute. However, it is still good law in cases where a corporation

---

1. The opinion actually cited "California Bank and Corporation Tax Law § 23304.1(a)." Section 23304.1(a), along with sections 23301, 23301.5 and 23305, appears in article 7 (Suspension and Revivor, commencing with § 23301) of

part 11 (Bank and Corporation Tax law, commencing with § 23001) of the Revenue and Taxation Code, which is the title used by California courts in citing to the law.

is not entitled to statutory revivor—and USSA was not subject to revivor when the prior motions were made and decided. *See id.* (citations omitted). Coastal thus had every right to void the contract, and it did so by moving for summary judgment on the contract.

For the same reason, Kirby's argument that the rule in *Van Landingham* and *Damato* was modified by subsequent legislation does not in any way invalidate my earlier ruling. Kirby is correct that, under substantial 1990 amendments to the California suspension and revivor law, a party seeking to void the contract must now do so subject to §§ 23304.5 and 23305.1. The right may only be exercised in a suit on the contract by a party, and the parties' rights under the contract are not affected "except to the extent expressly provided by a final judgment of the court, which shall not be issued unless the taxpayer is allowed a reasonable opportunity to cure the voidability" under § 23305.1. Cal. Rev. & Tax.Code § 23304.5.[2] Under § 23305.1, a corporation may now cure the voidability of contracts made during suspension. *See* § 23305.1 (setting forth conditions and requirements of obtaining from the California Franchise Tax Board a "certificate of relief from voidability"); *see also* Arthur F. Coon, "Dead or Revived? An Examination of California Revivor Law's Terminal Void in Corporate Existence," 24 Pac.L.J 1, 13–17 (1992) (noting that, in contrast to the confused state of the law on validity of other corporate actions taken during suspension, California statutory law clearly allows for retroactive validation of contracts made during suspension). In its motion to intervene, USSA relies on the revised 1990 statutes. They are irrelevant, however, to the motion for reconsideration. Once again, this is because USSA was not revived at the time of my earlier decision.

Finally, the court did not err in denying Kirby's request to abate the action to allow him to bring USSA into good corporate standing. Kirby insists that he was sandbagged at oral argument by defendants' corporate capacity defense, and even implies that he was not aware of USSA's suspension. Plaintiff insults this court by attempting to argue this position, which is clearly belied by the record. Regardless of when the suspension was brought to his attention, he had more than adequate notice that defendants might seek to void the contracts on these grounds. Indeed, this notice dates as far back as Kirby's complaint, which anticipated this very issue. (See Jan. 21, 2000 Hearing Tr. at 40.) Kirby could have revived USSA at any time prior to the decision on the prior motion; he chose not to do so. Therefore, the motion for reconsideration is denied.

### USSA'S MOTION TO INTERVENE

USSA now informs this court that, after last year's decision, it finally complied with certain requirements introduced into California law in 1990 (after *Damato* ) which allow for revivor, and that it has done so prior to entry of a final judgment of this court. As a result, the 1995 and 1996 contracts are no longer voidable for lack of capacity to contract, and, as I explain below, USSA now has standing to proceed with any claims on the contracts.

A newly revived USSA now moves at this late date to intervene as a party plaintiff pursuant to Federal Rule of Civil Procedure 24. The complaint filed by USSA with its motion to intervene lists the same four claims as the original complaint filed by Kirby.

Rule 24 provides for both (1) intervention of right and (2) permissive intervention. Fed.R.Civ.P. 24(a), (b). USSA argues that it should be allowed to intervene under both 24(a) and 24(b). I will examine each in turn.

---

**2.** The old § 23304 ("Every contract made in violation of this article is hereby declared to be voidable, at the instance of any party other than the taxpayer") was replaced in 1990 with § 23304.1, "which expressly enlarges its scope to include certain contracts made during periods of corporate suspension," and § 23304.5, "which apparently adopts and refines a holding of White Dragon, by declaring that rights to void such contracts may only be exercised in judicial proceedings culminating in a final judgment expressly addressing the issue and, even then, only after the taxpayer corporation has been allowed a reasonable opportunity to cure the voidability defect by complying with [§ ] 23305.1." *See* Arthur F. Coon, "Dead or Revived? An Examination of California Revivor Law's Terminal Void in Corporate Existence," 24 Pac.L.J 1, 16(1992).

### 1. Intervention as of Right

■ Rule 24(a), intervention of right, requires that the proposed intervenor "(1) file a timely motion; (2) show an interest in the litigation; (3) show that its interest may be impaired by the disposition of the action; and (4) show that its interest is not adequately protected by the parties to the action." *In re Holocaust Victim Assets Litig.*, 225 F.3d 191, 197 (2d Cir.2000) (citing *Catanzano v. Wing*, 103 F.3d 223, 232 (2d Cir.1996)). "Failure to satisfy any one of these requirements is a sufficient ground to deny the application." *Farmland Dairies v. Commissioner*, 847 F.2d 1038, 1043 (2d Cir.1988).

■ Points two and four are easily dispensed with. USSA's interest in this litigation is too obvious to warrant extended discussion. I have determined that USSA was the contra-party to the 1996 contract, and it may well be the contra-party to the 1995 contract. USSA's complaint lists the same causes of action and alleges the same facts, with only substitution of the parties. And Kirby, because he lacks standing, cannot adequately protect USSA's interests.

### a. The motion to intervene is timely in spite of USSA's dereliction and delay

■ The timeliness of USSA's motion is more complicated. The determination of the timeliness of a motion to intervene is within the discretion of the district court, "evaluated against the totality of the circumstances before the court." *Farmland Dairies v. Comm'r of the N.Y. State Dep't of Agric. and Markets*, 847 F.2d 1038, 1043–44 (2d Cir. 1988) (citations omitted). Circumstances considered in this determination include: (1) how long the applicant had notice of the interest before [he] made the motion to intervene; (2) prejudice to existing parties resulting from any delay; (3) prejudice to the applicant if the motion is denied; and (4) any unusual circumstances militating for or against a finding of timeliness. *United States v. Pitney Bowes, Inc.*, 25 F.3d 66, 70 (2d Cir.1994) (citations omitted).

USSA, through Kirby, has long had notice of its interest in this case. Whether in California or in New York, notice to the president of the corporation is notice to the corporation. *See Northern Natural Gas Co. of Omaha v. Superior Court*, 64 Cal.App.3d 983, 992, 134 Cal.Rptr. 850, 856 (1976), *In re Mediators, Inc.*, 105 F.3d 822, 827 (2d Cir. 1997); Restatement Agency 2d §§ 268, 381 (1958). USSA's argument that it could not intervene during its suspension is unavailing. I would not elect to reward USSA and Kirby for non-payment of taxes. I also reject USSA's claims that it did not really have an interest in this case until I identified the company as the contra-party to the 1996 contract. The very fact that Kirby sued "d/b/a USSA Corp." belies any such contention.

A finding of timeliness is nevertheless warranted. First, in light of my holding below, that USSA now has standing to assert its claims, intervention will allow this court to resolve all related issues in this suit. *See United States v. Pitney Bowes, Inc.*, 25 F.3d 66 (2d Cir.1994). With USSA an unambiguous party before the court, this matter can be adjudicated in its entirety, without any risk that USSA will file a separate action seeking vindication of its rights under the contracts. Moreover, as USSA is already before this court as a nominal plaintiff (under the guise of a "d/b/a" caption), the change in the caption is a mere formality.

Finally, I find that intervention, while late in the process, will not unduly prejudice the defendants. Coastal's primary objection centers on discovery. USSA claims that there will be no need for extensive additional discovery. In its motion to intervene, USSA affirms that because Kirby believed that the corporation had ceased to exist and that he was conducting business on his own, there are no corporate records from the period in question that are distinct from Kirby's own records,. However, USSA contradicts this statement in the very next sentence of its brief, when it represents to the court that it is prepared to produce its corporate books, which date from 1988, and corporate tax returns prepared in connection with the revivor of the company, upon filing of USSA's complaint.

If there were to be massive additional discovery, intervention at this late date would

give me pause. However, since a newly-filed action by USSA would be timely, and would result in starting discovery all over again, defendant's objection is not enough, standing alone, to merit a finding of untimeliness. Discovery has been proceeding on the same breach of contract claims, between the same parties, or parties in privity, that USSA now seeks to assert. To the extent that USSA or Kirby has yet to provide defendants with any remaining discovery pertaining to the business and records of USSA for the relevant time period, plaintiffs must do so within 10(ten) business days of this order. I will not tolerate the parties' usual approach to discovery—bickering and delay—on this issue. If, as USSA contends, there is very little left to produce, plaintiffs should be able to comply with this request well before the deadline. USSA will be precluded from relying on any document not produced by the tenth day.

 b. USSA's interests will be impaired by disposition of the action

If revivor did not affect the voidability of the contracts at issue, USSA would have no standing, no interest in the case, and intervention would be futile. *See Ceribelli v. Elghanayan*, No. 91 CIV. 3337, 1994 WL 529853 at *2 (Sept. 28, 1994 S.D.N.Y.) (noting that legal futility is a basis for rejecting a proposed intervention under Fed.R.Civ.P. 24, or an amended pleading under Rule 15); *see also U.S. v. Glens Falls Newspapers, Inc.*, 160 F.3d 853, 856 (2d Cir.1998) (agreeing with district court's denial of motion to intervene on futility grounds, where decision to grant relief sought by intervenors would delay or prevent settlement).

But in fact, revivor does affect voidability in this case.

 A suspended corporation may still enter into contracts. As discussed above, any contract formed during this period is voidable, not void *ab initio*. *See* Cal.Rev. and Tax.Code §§ 23301, 23304.1. However, under § 23304.5, which was added to the Code in 1990:

> A party that has the right to declare a contract to be voidable pursuant to Section 23304.1 may exercise that right only in a lawsuit brought by either party in a court of competent jurisdiction and the rights of the parties to the contract shall not be affected by Section 23304.1 except to the extent expressly provided by a *final judgment* of the court, *which judgment shall not be issued unless the taxpayer is allowed a reasonable opportunity to cure the voidability under Section 23305.1.* If the court finds that the contract is voidable under Section 23304.1, the court shall order the contract to be rescinded.

Cal.Rev. and Tax.Code § 23304.5 (emphasis added). The highlighted language makes clear that a contract is not void under this section until entry of a final judgment by the court.

Section 23305.1, cited in § 23304.5, entitles a corporation no longer under suspension to seek relief from the voidability of contracts formed while the corporation was suspended. *See* Cal.Rev. and Tax.Code § 23305.1 (listing requirements necessary for taxpayer to cure voidability). Thus, under California law, if a corporation cures its suspension before entry of a final judgment, contracts made during the suspension and covered by § 23305.1 are no longer voidable for lack of capacity to contract.

Following the January 31, 2000 decision, USSA finally complied with the requirements of § 23305.1, and received a Certificate of Relief from Voidability from the Franchise Tax Board covering the period of the 1995 and 1996 contracts. This court's January 31, 2000 decision was not a final judgment, as Rule 54(b) of the Federal Rules of Civil Procedure makes clear:

> When more than one claim for relief is presented in an action ... the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment.

Fed.R.Civ.P. 54(b); *see also Johnson v. Jones*, 515 U.S. 304, 311–15, 115 S.Ct. 2151, 2156–57, 132 L.Ed.2d 238, 244–250 (1995) (partial summary judgment is not a "final" appealable judgment); *Curtiss–Wright Corp.*

*v. General Elec. Co.*, 446 U.S. 1, 8–9, 100 S.Ct. 1460, 1465, 64 L.Ed.2d 1 (1980) (same).

 Thus, USSA now has standing to bring suit on the 1996 and 1995 contracts, and because of the new law, Coastal no longer has the option (as it did at the time of *Van Landingham* and *Damato* ) to treat the contracts as voidable. This outcome is consistent with California courts' interpretation of the purpose for corporate suspension—to put pressure on the delinquent taxpayer to pay its taxes, not to punish the corporation once it has done so. *See Peacock Hill Assoc. v. Peacock Lagoon Constr. Co.*, 8 Cal.3d 369, 370, 503 P.2d 285, 286, 105 Cal.Rptr. 29, 31 (1972) (declaring purpose of § 23301 "is to put pressure on the delinquent corporation to pay its taxes, and that purpose is satisfied by a rule which views a corporation's tax delinquencies, after correction, as mere irregularities."); *Duncan v. Sunset Agricultural Minerals*, 273 Cal.App.2d 489, 492, 78 Cal.Rptr. 339 (1969) (citing *Traub Co. v. Coffee Break Service, Inc.*, 66 Cal.2d at 370, 57 Cal.Rptr. 846, 425 P.2d 790) (finding that "lack of capacity of a corporation to maintain an action by reason of suspension of corporate powers for nonpayment of taxes is a plea in abatement which is not favored in the law").

While the law requires this result, I must nevertheless express my annoyance at Kirby's game-playing on this issue. Plaintiff filed suit as "Jack Kirby d/b/a USSA Corp." to avoid paying the taxes he owed to bring USSA into good standing. He took pains to put his corporate affairs in order only *after* it became clear that he could not recover on the 1996 contract (and possibly the 1995 contract) in his individual capacity. As a result, he has subjected this court and the defendants to unnecessary motion practice and vexatious delay. Defendants have the option of filing a motion to recover costs and attorneys fees incurred in connection with both this motion and the predecessor motion, to the extent that defendant was forced to address the issue of corporate capacity.

2. Permissive Intervention

 I would, in any event, grant USSA's motion under 24(b). The Federal Rules provide for permissive intervention upon timely application: (1) when a statute of the United States confers a conditional right to intervene; or (2) when an applicant's claim or defense and the main action have a question of law or fact in common. In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties. Fed.R.Civ.P. 24(b); *accord Comer v. Cisneros,* 37 F.3d 775, 801 (2d Cir.1994).

There are common questions of law and fact in this case, as both Kirby's and USSA's claims are for breach of the same contracts. For this and the reasons discussed above, I would allow USSA to intervene under 24(b).

### MOTION FOR SUMMARY JUDGMENT ON THE 1995 CONTRACT

Now that both Kirby and USSA are parties to this action, and the contracts are no longer voidable on corporate suspension grounds, the issue of who formed both contracts is no longer relevant. Defendants' motion for summary judgment on the second and fourth claims is therefore denied. Obviously, the issue of breach remains for the jury.

### CONCLUSION

This constitutes the order and decision of the court.